LOUIS B. ROEPCKE, BY HIS NEXT FRIEND, v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Master and servant—Negligence—Risks of employment—Trial— Appeal.*

1. It is too well established to require the citation of authority that a case must be heard in the Supreme Court upon the claim and theory upon which it was tried in the court below.

2. Where, in a negligence case, it appears that the work in the performance of which the plaintiff, a railroad employé, was injured, was of a class common upon railroads, and clearly within plaintiff's duty to perform, and that the character of the work and the danger were apparent to any one, and no special skill or instructions were required, whatever risk or

danger there may have been was one incident to the employment, and one which the plaintiff assumed, and he cannot recover.

Error to Washtenaw. (Kinne, J.) Submitted on briefs January 19, 1894. Decided June 2, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*John F. Lawrence,* for appellant.

*Lehman Bros. & Cavanaugh,* for plaintiff.

GRANT, J. Plaintiff was a member of one of defendant's section gangs at work in the vicinity of Dexter. The defendant was engaged in the construction of a bridge and culvert, and for that purpose had hauled upon flat cars oak timbers from 30 to 40 feet long, and from 12 to 15 inches in diameter. Plaintiff was 19 years of age, and possessed of average intelligence. He had worked for the defendant two weeks in the fall of 1889, and two weeks in the spring of 1890, previous to the accident, which occurred on April 10. Aside from this, most of his time appears to have been spent upon a farm. His work, while in the defendant's employ, had consisted in shoveling dirt, raising the track, and putting gravel under the ties. Just previous to the accident, he was engaged in removing stones. While thus engaged, his gang was ordered by the road-master to go to assist in unloading these logs. Some eight or ten workmen were engaged in this work. Plaintiff, with others, went upon the cars to roll off the logs. As the logs rolled off, some fell and rested diagonally across the others. The road-master ordered plaintiff and some of the others to get upon the pile, and arrange them so they would lie parallel. Plaintiff complied with the order, and, while thus at work, a log rolled upon him, breaking his leg.

The declaration contains two counts, which, however, are substantially alike. The duty alleged will appear from the negligence charged. After alleging the duty, the declaration alleges that—

"The defendant wrongfully, knowingly, recklessly, carelessly, and negligently ordered and directed plaintiff to go onto the side of said embankment, and among said timbers, —a place of danger,—without notice, preparation, warning, or instruction, and did not furnish him a reasonably safe place in which to work; that plaintiff had no experience in said work, and was wholly ignorant of the danger to which he was exposed, and had no time to question or investigate the propriety of such order, and no conception of the danger incident to the obeying thereof, all of which the defendant well knew; that acting under said order, and inexperienced as he was, and not understanding the danger to which he was exposed, and without fault or neglect on his part, he attempted to perform the order; and that while so doing, and without any notice or instruction or warning of danger, said timber moved upon him, caught his left leg, and broke the same above the ankle."

The testimony on the part of the plaintiff shows that the order was twice repeated before being complied with. Plaintiff described the manner of the accident as follows:

"I got somewhere about the middle of a stick of timber, and when I went to take hold of it they rolled them down from the car, and that set the other timbers in motion, and it struck my leg. I saw it coming, and was trying to get away from it, and get over it, and it struck my left leg, and rolled upon it and broke it."

On cross-examination he testified:

"I expected it [the log] would come down easy enough so I would not have to get out of the way. I supposed it would come easy, so I could hold it.

"Q. Then all the men who got off this log got hold of it from the north side?

"A. I don't know as anybody got hold of it. They started it, when those fellows above told them to keep them coming, the mail was due."

At the request of the defendant, plaintiff, shortly after

the accident, made a written statement as to how it occurred, in which he said:

"Mr. Hickey asked us to roll the poles that catched. Five or six of us got in front of the outside stick to roll it out. It started sooner than I thought it would, it being down hill, and, before I could get out of the way from it, it rolled over my leg, and broke my leg four inches above the ankle. We could not get behind it, as the other sticks were in the way."

One West, who was engaged in the work, testified as to the order of the road-master, and that he told him that it was not a safe place, and witness went to the end of the logs, but did not get among them. This witness does not state whether the log that rolled on plaintiff was one that rolled from the car while he was at work, or the one at which the plaintiff was at work. Samuel Molock testified that the road-master told a part of the men " to get off and roll them away, and let the rest stay on top and keep them moving." He testified, also, that the log started from the car, and rolled down on plaintiff.

The defendant introduced no evidence, but demurred to plaintiff's evidence, and asked the court to direct a verdict for the defendant for the following reasons:

"1. There is no allegation in the declaration pointing out in what manner the work that Roepcke (the plaintiff) was ordered to do was dangerous.

"2. There is no allegation that the risk of the work which the plaintiff performed under the direction of the master was not apparent to the plaintiff.

"3. There is no allegation that the plaintiff was ordered to move the logs in any particular manner, and for that reason the work was not dangerous.

"4. It appears from the testimony that the plaintiff was aware of the danger in undertaking to move this log, and voluntarily assumed the risks connected with his employment.

"5. It appears from the testimony in the case that there were no dangers or risks connected with the moving of this log that were latent or concealed, and that all the dangers

or risks connected with it were apparent and obvious, and therefore the plaintiff is deemed to have accepted and continued the work of moving this log in reference to the risks that were known to him."

The direction was refused, and the case submitted to the jury under the following instruction:

"If you find from the evidence that the place where the accident occurred was one of unusual danger and peculiarly hazardous; that the plaintiff was peremptorily ordered into this place of danger by the road-master; that by reason of his youth and inexperience, and the circumstances then surrounding him, he did not comprehend the danger, or if, having some misgivings as to his safety, he believed that the danger was not so imminent as to threaten any immediate or unavoidable injury, and that it was reasonably possible that the danger might be avoided by care and caution on his part, and that, therefore, he relied upon what he deemed the superior knowledge of the road-master, and believed that he was only doing his duty in obeying his order, and if you further find from the evidence that the order given by the road-master to the plaintiff was careless, reckless, and negligent on his part, and that plaintiff was free from fault,—he is entitled to recover."

The declaration is based entirely upon the theory that it was negligent to place the plaintiff, who was inexperienced in such work, upon the logs, to move those that had fallen diagonally across the others, and that the injury resulted from the moving of one of those logs; that the place was unsafe, and that the work was extrahazardous *per se;* and that the injury did not result from an extraneous cause. It is evident that the cause was tried and submitted to the jury upon that theory. No intimation appears, either in the charge of the court or anywhere in the record, of any other ground of liability. It is not insisted that it was not proper and necessary to have the logs so arranged. Manifestly, the work could not be performed in any other way. It is difficult to understand

100 Mich.—35.

how there was any extra hazard in such work. If the plaintiff's contention be true, then any person engaged in hauling and piling logs, and desiring them placed in a compact pile, would be negligent in requiring his workmen to arrange one that had fallen out of line. There may have been some liability to accident in performing it, but there seems to be no good reason why, with the exercise of proper care, it could not have been done with safety. It was a class of work that is common upon railroads, and clearly within the duty of section men to perform. *Harrison v. Railroad Co.*, 79 Mich. 409. The character of the work and the danger were apparent to any one. It required no special skill or instruction. *Timm v. Railroad Co.*, 98 Mich. 226. Whatever risk or danger there may have been, it was one incident to the employment, and one which the employé assumed. Under this theory it is entirely clear, on both authority and reason, that the plaintiff could not recover. The place was safe, and could have been rendered unsafe only by rolling down from the car logs while the plaintiff was engaged in the work of arranging the others, and giving him no warning or time to put himself out of danger. If logs were rolled down from the car, by the workmen upon it, without the authority or direction of the road-master, this would be an act of fellow-servants, for which the plaintiff could not recover. If, however, the act was authorized or directed by the road-master,—the *alter ego* of the defendant,—then it would be liable.

It is asserted by the defendant's counsel in his brief that the claim of liability for rolling the logs from the car while the plaintiff was thus engaged is made in this Court for the first time. This statement is not denied by the plaintiff's counsel. It appears to be true from the fact that no reference is made to such claim either in the declaration or in the charge of the court, and from the further fact that no prominence was given to it in the

testimony.    The only testimony to sustain it comes from one witness, who, in relating the occurrence, testified that Mr. Hickey told "a part of them to get off and roll them away, and let the rest stay on top and keep them moving." It is too well established to require the citation of authority that the case must be heard in this Court upon the claim and theory upon which it was tried in the court below. We are therefore reluctantly compelled to reverse the judgment and order a new trial.

Under the declaration as it now stands, the plaintiff could not recover. We think that, upon application, he might amend it.

Judgment reversed, and new trial ordered.

The other Justices concurred.