TERPSTRA *v.* GRAND MOBILE TRAILER SALES.

AUTOMOBILES—HOUSE TRAILERS—CERTIFICATE OF TITLE—RETURN OF
PURCHASE PRICE—NEGLIGENT DESTRUCTION OF TRAILER.

Defendant seller of house trailer who failed to deliver a certificate
of title to plaintiff purchaser at time of sale and from whom
latter sought to recover purchase price after having himself
negligently destroyed the trailer while endeavoring to thaw
out pipes with a heat lamp *held,* not liable for return of
purchase price due to plaintiff's inability to return trailer to
defendant (CLS 1956, §§ 257.217, 257.239).

Appeal from Kent; Verdier (Leonard D.), J.
Submitted April 9, 1958. (Docket No. 25, Calendar
No. 47,255.) Decided June 11, 1958.

Assumpsit by Theodore R. Terpstra against
Grand Mobile Trailer Sales, a Michigan corpora-
tion, to recover purchase price of unlicensed house
trailer destroyed by fire after purchase. Judgment
for defendant. Plaintiff appeals. Affirmed.

*Henry J. Blakely,* for plaintiff.

*Rom & Newton Dilley,* for defendant.

EDWARDS, J. *(concurring).* This is the story of a
trailer, a statute and a lawsuit which, if successful,
would make the law look foolish.

REFERENCES FOR POINTS IN HEADNOTES
46 Am Jur, Sales §§ 766, 768.

Plaintiff purchased the trailer from defendant on September 22, 1955. He paid the purchase price of $1,325 in full by trading in a trailer and paying the balance in cash. The trailer was delivered to plaintiff the next day and he started living in it.

On November 29, 1955, the trailer was destroyed by fire while plaintiff was attempting to thaw out some pipes on its under side with the use of a heat lamp. So much for the trailer!

Now, the statute. Michigan's motor vehicle code requires any dealer in vehicles to apply for a certificate of title to the vehicle, and to deliver such certificate to the purchaser at the time of the sale. CLS 1956, §§ 257.217, 257.239 (Stat Ann 1957 Cum Supp § 9.1917, Stat Ann 1952 Rev § 9.1939). This statute has been interpreted by Michigan case law as rendering *void* any sale wherein its provision for transfer of title was not complied with. *Endres* v. *Mara-Rickenbacker Co.*, 243 Mich 5; *Scarborough* v. *Detroit Operating Co.*, 256 Mich 173; *Bayer* v. *Jackson City Bank & Trust Co.*, 335 Mich 99.

This statute was not complied with in the trailer sale with which we deal. Defendant did not give plaintiff a certificate of title at the time of the sale, advising him that no title was available but that it had been sent for. It is apparently conceded that defendant, up to and after the destruction of the trailer, was engaged in seeking to secure a certificate of title, finally being advised by letter dated December 28, 1955, that no title was available because the trailer was manufactured in South Carolina, a nontitling State. At that point, the trailer having already been destroyed, plaintiff declined defendant's request to sign an application for title in this State.

On June 5, 1956, plaintiff filed a suit in assumpsit setting forth the sale and defendant's failure to deliver a certificate of title, and claiming damage as follows:

"That by reason of the failure of the defendant to deliver to this plaintiff a certificate of title to the said trailer, this plaintiff has been damaged in the amount of $1,325."

Defendant answered, denying plaintiff was entitled to return of the purchase price, and asserting that the claim was defeated by the plaintiff's failure to tender the trailer back and by plaintiff's negligence in occasioning the destruction of the trailer by fire.

At trial without a jury, the circuit judge gave judgment of no cause for action on the grounds of the second of defendant's stated defenses, and plaintiff appeals.

Before this Court, plaintiff presents the same 2 questions, namely: (1) Was tender of the trailer a condition precedent for return of the purchase price; and (2) Was the trial court in error in holding plaintiff's own negligence resulted in destruction of the trailer and barred plaintiff's recovery.

Since, in our view, the first of these questions decides this case, we will not discuss the negligence matter. In deciding this case, we have the following undisputed facts in mind: Plaintiff never offered any complaint about the terms of the sale, or any complaint about the trailer. It is obvious that defendant's failure to transfer title had no bearing on the trailer's destruction. It is equally obvious that after the trailer was destroyed, plaintiff did not, and could not, make a tender back of it.

Appellant argues in effect that the contract being void because of the illegal omission to transfer title, the courts are thereby deprived of all discretion to render justice between the parties. He would have the court required, by application of claimed legal principles, to order the return of the *quid* where the returnee had destroyed the *quo*. However plainly inequitable such a result, we are told this is exactly

what the statute and our previous case interpretations thereof require.

We do not so read the cases. In those where recovery of the purchase price was allowed, the seller either had possession of the vehicle or tender thereof was shown. The effect of court action in each instance was to restore the status quo before the transaction. *Bos* v. *Holleman De Weerd Auto Co.,* 246 Mich 578; *Scarborough* v. *Detroit Operating Co., supra; Fullwood* v. *Catsman,* 329 Mich 120.

See, also, *Bayer* v. *Jackson City Bank & Trust Co., supra,* 108.

While we do not find that the exact situation presented by this case has previously been dealt with by this Court, its counterparts are not unknown to the law.

The broad general principle that void contracts are unenforceable in the courts has many qualifications which, under given circumstances, may provide a remedy for one who innocently is threatened with unjust loss through the voiding of the transaction.

Where the results which this rule would reach are plainly unjust, many courts have indulged in a distinction between an act *malum prohibitum* and an act *malum in se.*

Thus, an intermediate court in Missouri recently dealt with a fact situation somewhat similar to our present case:

"Unless a certificate of title, correctly describing the motor vehicle sold, is assigned and delivered to the buyer, the attempted sale of any motor vehicle registered under the laws of this State is fraudulent and void and no title passes. This is true, not because of any judicial reasoning, but because the absolute and mandatory provisions of [Mo Rev Stat 1949] § 301.210(4) plainly so state. *Robinson* v. *Poole* (Mo App), 232 SW2d 807, 811. However, since an attempted contract within the statutory

prohibition implies no moral turpitude and thus is simply *malum prohibitum* rather than *malum in se* [*Boyer* v. *Garner* (Mo App), 15 SW2d 893], it has been recognized in numerous Missouri cases that, so long as the contract of sale remains executory, *i.e.*, before assignment and delivery of a proper certificate of title [*Winscott* v. *Frazier* (Mo App), 236 SW2d 382, 383], the buyer may repudiate the contract and may recover what he has paid, provided he acts within a reasonable time and returns, or offers to return, the motor vehicle in substantially as good condition as it was when he received it. Strictly speaking, an action by the buyer of a motor vehicle to recover what he has paid under a *void* contract of sale does not involve rescission or the rules relating thereto, for rescission contemplates a *voidable but existing* contract. *Schroeder* v. *Zykan* (Mo App), 255 SW2d 105, 111(8), and cases there cited. However, our appellate courts frequently have referred, interchangeably and indiscriminately, to *rescission* as well as *repudiation* of a *void* contract of sale for a motor vehicle, perhaps by reason of the fact that, to recover the purchase price paid under such void contract, the buyer 'must perform the same acts which in the case of a voidable contract would amount to a rescission.' *Schroeder* v. *Zykan, supra,* 112." *Kesinger* v. *Burtrum* (Mo App), 295 SW2d 605, 608, 609.

See, also, *Rosasco Creameries, Inc.,* v. *Cohen,* 276 NY 274 (11 NE2d 908, 118 ALR 641); *American-La France & Foamite Industries, Inc.,* v. *Arlington County,* 169 Va 1 (192 SE 758).

While criticizing the distinction between an illegal act *malum prohibitum* and one *malum in se* as difficult to define with accuracy (6 Corbin on Contracts, § 1378), Corbin provides this general discussion of the varied grounds for remedy:

"There are many varieties and degrees of 'illegality.' These varieties and degrees must be taken into account in determining the juristic effect of a

transaction that involves some form of illegality. It is far from correct to say that an illegal bargain is necessarily 'void,' or that the law will grant no remedy and will always leave the parties to such a bargain where it finds them. Such general statements are indeed found in great number, faithfully reprinted in long columns of digest paragraphs; they render only a wearisome disservice when repeated with no reference to the facts of the cases in which they have been made. Before granting or refusing a remedy, the courts have always considered the degree by the offense, the extent of public harm that may be involved, and the moral quality of the conduct of the parties in the light of the prevailing mores and standards of the community.

"A bargain may be illegal for the reason that some *performance* that is either promised or rendered under it is unlawful and forbidden. The performance in question may be described as a crime, a tort, or a breach of contract. It may be 'forbidden' by statute without being described as any of these. Even if called a 'crime,' there are immense variations in degree; it may be a 'felony' or a mere 'misdemeanor,' a great evil or a little evil. It may have been regarded with general abhorrence for so long a time that it has been described as *malum in se;* or it may have been only recently declared a crime by some enactment forced through a spineless legislature by the vociferation and voting threats of a pressure group having an economic interest to serve (*e.g.,* it is a 'crime' to sell margarine already colored) or with a desire to compel others to conform to their 'higher' standards (*e.g.,* prohibition, the 'blue laws'), then being described as only *malum prohibitum.* These Latin phrases have, with good reason, been abandoned; but the distinction that they badly expressed is still with us, the distinction in 'degree' between a great evil and a little evil. Some illegal acts now involve 'serious moral turpitude,' others only a mild form of 'turpitude,' and still others no 'turpitude' at all.   *   *   *

"A party who has rendered part or all of the bargained-for exchange, or has otherwise materially changed his position in reliance on the return promise in an 'illegal' bargain, has often seemed to deserve and has often been given a restitutionary remedy. Some of the factors that are influential in determining whether restitution or some other judicial remedy will be granted will be considered in the next succeeding sections, as well as throughout the chapters dealing with the various kinds of illegality. Among these factors are the degree of criminality or evil, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty or forfeiture that will result from refusal of relief. These factors occur in numberless combinations, making easy generalizations unsafe, however frequently they may be repeated. The specific combination that is found in each particular case must be weighed in the light of prevailing mores and judicial experience. These are themselves so variable that uniformity of decision cannot be expected; and the factors actually existing are not reported in appellate opinions with sufficient completeness to justify a confident judgment as to how far the courts have departed from uniformity and consistency." 6 Corbin on Contracts, § 1534, pp 1055–1058.

It is perhaps sufficient for our present case to quote the general rule pertaining to void contracts, phrased thus in 2 Restatement, Contracts, § 598:

"A party to an illegal bargain can neither recover damages for breach thereof nor, by rescinding the bargain, recover the performance that he has rendered thereunder or its value, except as stated in §§ 599–609."

We note and have examined the exceptions to the quoted rule and cannot find that appellant's claim (in the absence of tender) qualifies under any one of

them. It appears plain from the authorities cited that where one seeks a remedy because of part performance under a void contract, the courts examine (in Corbin's words, *supra*) "the degree of criminality or evil, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty or forfeiture that will result from refusal of relief."

On such an examination, we find little other than purely technical guilt in defendant's conduct, and we find ordinary standards of justice offended by appellant's claim for his money back after he had accidentally or negligently destroyed the trailer.

The rule is stated thus in a recent ALR2d annotation:

"In the ordinary case of rescission or repudiation the buyer must return or tender the return of the vehicle before suing for a refund of the purchase price on the ground that the seller has not given him a certificate of title. *Sprowl* v. *Foshee* (1956, La App), 86 So2d 638; *Riss & Co.* v. *Wallace* (1946), 239 Mo App 979 (195 SW2d 881); *Winscott* v. *Frazier* (1951, Mo App), 236 SW2d 382; *Cantrell* v. *Sheppard* (1952, Mo App), 247 SW2d 872; *Smith* v. *G. F. C. Corp.* (1953, Mo App), 255 SW2d 69; *Schroeder* v. *Zykan* (1953, Mo App), 255 SW2d 105; *Kesinger* v. *Burtrum* (1956, Mo App), 295 SW2d 605; *Lebcowitz* v. *Simms* (1957, Mo App), 300 SW2d 827." 58 ALR2d 1351, 1365, 1366.

The trial judge arrived at the same result for a different reason. In such a situation, we do not reverse. *Lentz* v. *Teutonia Fire Insurance Co.,* 96 Mich 445; *Township of Pontiac* v. *Featherstone,* 319 Mich 382.

Affirmed. Costs to appellee.

VOELKER and KAVANAGH, JJ., concurred with EDWARDS, J.

CARR, J. In September, 1955, the plaintiff entered into an agreement with defendant for the purchase of a Spartan trailer for the sum of $1,325. The purchase price was paid and plaintiff took possession of the trailer, living in it until it was destroyed by fire in November following delivery of possession. Defendant at the time of the transaction had no certificate of title for the trailer and failed to obtain one for assignment to plaintiff. For the reasons set forth by this Court in *Endres v. Mara-Rickenbacker Co.*, 243 Mich 5, and approved in later decisions, the sale of the vehicle was void under the motor vehicle code of the State.

Following the destruction of the trailer as indicated, plaintiff instituted the present action against defendant to recover the purchase price, relying on the claim that the transaction was wholly void, that defendant was the owner of the trailer at the time of its loss, and that plaintiff was entitled to recover what he had paid. The case was heard before the trial judge, sitting without a jury. From the proofs before him he concluded that the loss of the vehicle was the proximate result of negligent conduct on the part of plaintiff. Recovery was denied for that reason and judgment was entered accordingly. The proofs in the case fully supported the conclusion reached by the trial judge as to the reasons for plaintiff's inability to return the trailer to the defendant prior to the bringing of the action. For the reason given, the judgment from which plaintiff has appealed should be affirmed.

Whether right of recovery in a case of this nature should be denied where the subject matter of the void sale has been lost or destroyed without fault on the part of the purchaser is not before us for determination. The circuit judge based his decision on the facts here involved and was correct in so doing. The case involves merely the right of a would-be pur-

chaser of a motor vehicle under a void agreement to recover the purchase price paid where the return of the vehicle has been rendered impossible because of the negligent acts of the plaintiff.

The judgment is affirmed, with costs to defendant.

DETHMERS, C. J., and KELLY, SMITH, and BLACK, JJ., concurred with CARR, J.