### WALDRON *v.* DRURY'S VAN LINES, INC.

1. AUTOMOBILES—TRACTORS—RENT—PURCHASE—BURDEN OF PROOF—EVIDENCE.

    Contention that transaction relative to tractor, used to pull a trailer in the transportation of household goods throughout the country, was for rental and that plaintiff had failed to sustain his burden of proof that there had been an oral agreement to purchase the tractor *held*, not sustained in view of the record and findings of the trial court.

2. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF TRIAL COURT.

    Findings of the trial court will not be disturbed on appeal unless there is a clear showing of error.

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Bailments § 22 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 5 Am Jur 2d, Appeal and Error § 545.
[4, 5, 7] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 30, 31.
    Constitutionality, construction, and application of statutes or other regulations regarding sale or offer for sale of used automobiles. 134 ALR 647.
[6] 20 Am Jur 2d, Courts § 183 *et seq.*
[8] 5 Am Jur 2d, Appeal and Error § 819.
[9] 20 Am Jur, Evidence § 147.
[10] 4 Am Jur 2d, Appeal and Error § 523.

3. SAME—QUESTIONS REVIEWABLE—RESCISSION OF CONTRACT TO PURCHASE TRACTOR.

  Issue as to whether Michigan or Illinois law controlled rescission of contract to purchase a tractor will not be considered by Court of Appeals, where it had not been raised in the trial court.

4. AUTOMOBILES—INDORSEMENT AND DELIVERY OF CERTIFICATE OF TITLE—SALES—PENALTY.

  The seller of a motor vehicle is required by statute to indorse and deliver the certificate of title to the purchaser, it being a misdemeanor to fail to do so (CLS 1961, §§ 257.233, 257.239).

5. SAME—VOID SALES—RECOVERY OF PAYMENTS.

  A sale of a motor vehicle in violation of the requirement of the statutes requiring the seller to indorse and deliver the certificate of title and making it a misdemeanor to fail to do so is void, and the moneys paid under such a void contract can be recovered by the purchaser (CLS 1961, §§ 257.233, 257.239).

6. COURTS—PRECEDENT.

  A precedent proposed by a party will not be followed where the facts in the instant situation are significantly different.

7. AUTOMOBILES—INDORSEMENT AND DELIVERY OF CERTIFICATE OF TITLE—REPOSSESSION—PAYMENTS.

  Defendant seller of motor vehicle who had failed to indorse and deliver the title thereto and later repossessed the vehicle was liable to the purchaser for payments made on the purchase price (CLS 1961, § 257.233).

8. APPEAL AND ERROR—AUTOMOBILES—EMPLOYMENT—INDEPENDENT CONTRACTOR—CONTRACTS.

  Error was not committed by trial court in failing to make a finding as to whether plaintiff and defendant had entered into an employment relation relative to operation of a tractor to pull a trailer in the transportation of household goods throughout the country or whether plaintiff was an independent contractor *held*, not relevant, where the trial court was dealing with specific contracts and whether money was due under them.

9. CONTRACTS—BURDEN OF PROOF—OPERATION OF TRACTOR—ABANDONMENT.

  Plaintiff who had been engaged to operate tractor he purchased from defendant to pull trailer in the transportation of household goods throughout the country was not entitled to payment for accounts involved in load which he had abandoned

when equipment failed and which he had never delivered, since he failed to sustain his burden of showing he had earned the right thereto.

10. SAME—AUTOMOBILES—REPOSSESSION—REPAIRS—EVIDENCE.

Deduction by trial court of sum for use of tractor, cost of repossession, and repairs necessitated to restore tractor to operable condition as of time of sale to plaintiff *held,* unsupported in record presented on appeal in action by plaintiff tractor operator who had purchased it under a void contract and later abandoned it when the equipment failed (CLS 1961, § 257.233).

Appeal from Macomb; Noe (Alton H.), J. Submitted Division 2 June 15, 1965, at Grand Rapids. (Docket No. 240.) Decided November 15, 1965.

Declaration by Lester K. Waldron against Drury's Van Lines, Inc., a Michigan corporation, to rescind a contract for the purchase of a truck tractor, to recover moneys paid, and for incidental damages. Judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals questioning the measure of recovery. Affirmed and remanded for the correction of the judgment.

*Hand, Kiefer, Allen & Ryan (McLean & Davidson,* of counsel), for plaintiff.

*Kramer, Morris, Stark, Rowland & Regan (W. Leo Cahalan, Jr.,* and *Ramon S. Regan,* of counsel), for defendant.

FITZGERALD, P. J. This case presents a phantasmagoria of facts and figures stemming from a course of dealings between the parties relating to the moving business.

Arising as it does from a shifting, complex relationship in which no one seems to recall exactly what happened, it is scarcely to be wondered at that the trial court described the record as one "filled with

inconsistencies and completely divergent stories as
to the relationship between the parties and as to
moneys expended." The court aptly characterized
the proceedings as a "welter of bills, receipts, meager
records and lack of specific memory as to certain
fundamental matters."

In view of conflicting statements of fact that do
not reconcile with facility, we can do no better than
adopt, with appropriate paraphrasing, the statement
of events included in the trial court's opinion.

The findings of the trial court were, in substance,
that on or about April 1, 1958, the plaintiff and
defendant entered into an oral contract in which the
plaintiff was to drive a tractor and pull a trailer
owned by the defendant in the transportation of
household goods throughout the country. The de-
fendant was an agent of North American Van Lines
of Fort Wayne, Indiana, a common carrier, certifi-
cated by the I.C.C. to perform such services. By the
contract which defendant had with North American
Van Lines, the defendant leased the tractor and
trailer exclusively to such carrier. Thereafter a con-
tract with such company being terminated on or
about May 26, 1958, defendant entered into a similar
contract with National Van Lines which contract
again provided that defendant would furnish all
vehicles as well as labor necessary to perform its
contract with such National Van Lines.

At the time of the original oral contract, the de-
fendant claims that it rented to the plaintiff a 1956
Dodge tractor at the rate of $300 per month, which
was to be paid out of so-called line haul fees. This
situation has raised one of the major disputes in this
matter, it being the claim of the plaintiff that it was a
sale of a tractor, whereas the defendant claims that
only a rental was intended. On this particular issue,
the only independent evidence is plaintiff's exhibit 15
which is a statement furnished the plaintiff by the

defendant in April, 1958, which indicates that a tractor, without further description, was leased at $3,900, and a payment credited thereon at the time of $300, leaving a balance of $3,600. This $300 payment is definitely designated "tractor payment". Throughout the trial it is acknowledged that $1,100 was paid on such tractor deal, interpreted by plaintiff as payment of the tractor and by the defendant as rental. This part of the transaction was not accompanied by any further written evidence of a transfer of title, but remained as indicated on exhibit 15, until later and on or about May 26, 1958, when, according to plaintiff's exhibit 12, plaintiff and defendant entered into a conditional sales agreement covering another 1956 Dodge tractor. In the course of the testimony it was developed that $1,100 was credited on this purchase, being the payments made on the first 1956 Dodge tractor which was the subject matter of the original oral contract between plaintiff and defendant. This transaction was not completed by reason of the fact that the license and title transfer were never formally accomplished as required by Michigan law.

Plaintiff entered upon his duties as a driver, first taking instructions at a school conducted for drivers, and being considered a suitable driver, allowed to take equipment on the road and commence operations. Defendant guaranteed upkeep of the truck for 30 days and advanced several sums of money during the course of the plaintiff's operation on the highways. These were handled out of the so-called line haul fees which were due the plaintiff on a percentage basis pursuant to contract between the plaintiff and defendant and defendant and the National Van Lines. Plaintiff's trips took him from coast to coast and involved long and expensive hauling operations, requiring the outlay of a considerable amount of money, both by defendant and by plain-

tiff. The expenses were so great, as a matter of fact, that plaintiff encountered severe difficulties continuing the operation of the tractor for the defendant, and ultimately found himself in Shreveport, Louisiana, with a load of household goods and a truck which had broken down, the said plaintiff having no funds with which to repair the same or to continue to his destination in Texas.[1] Plaintiff, from that point, notified the defendant that he was unable to continue and requested defendant to pick up the equipment which defendant did, after a second trip by his employee, and this seemed to terminate all relationship between plaintiff and defendant.

Suit on these convoluted dealings was begun on March 5, 1959, and trial, without jury, resulted in a judgment for plaintiff in the sum of $2,924.72, plus costs and charges in the sum of $115.

The multitudinous questions presented on appeal, we will deal with seriatim, drawing again from the trial court's findings and relating our views thereon.

Defendant first contends that the agreement concerning the first 1956 Dodge tractor was for rental, and not for purchase as claimed by plaintiff, and that plaintiff has failed to satisfy his burden of proving an oral agreement to purchase. These contentions are not sustained when viewed in the light of the record and the trial court's findings.

The record reveals that James Drury, president of defendant corporation, admitted under cross examination that the agreement covered the purchase of the first tractor:

"*Q.* You say that's payment for the tractor?

"*A.* It would have been a payment for the tractor, that's right. And the $20 would be the credit or the

---

[1] In another portion of the opinion, the judge notes that plaintiff had requested financial assistance from defendant in accordance with prior arrangements in order to complete the run, but that funds were not forthcoming.

payment of the $10 per month for lubrication or washing, or whatever you want to call it.

"*Q.* In other words, he was buying the tractor?

"*A.* Yes, evidently."

In support of his finding that "there existed between the parties under the oral contract, an agreement to purchase the original 1956 Dodge tractor", the trial judge states in his opinion that:

"Plaintiff's exhibit 15 definitely establishes from records furnished by defendant to plaintiff that a purchase was intended, albeit no written transfer of title accompanied the same. This is further evidenced in a subsequent purchase under a conditional sales contract, exhibit 12, and the testimony given in reference thereto that $1,100 which had been paid on the original contract was allowed as a credit in the sale and purchase of the second 1956 Dodge tractor."

There is testimony to support the claim of plaintiff that the oral agreement covered the purchase of the first tractor and findings of the trial court will not be disturbed on appeal unless there is a clear showing of error. *Gocha* v. *Fetterolf* (1961), 363 Mich 344; *Leski* v. *State Farm Mutual Automobile Insurance Company* (1962), 367 Mich 560.

Defendant further questions whether plaintiff could rescind the contract to purchase the second 1956 Dodge tractor and recover the moneys paid thereon. No transfer of title accompanied the sale of the second 1956 Dodge tractor.

Defendant urges that the contract for the purchase of the second tractor was governed by Illinois law which, defendant suggests, prevents plaintiff from rescinding the contract for the purchase of the second tractor. This issue was not raised in the trial court and under well-settled law will not be considered now, on appeal. *Roepcke* v. *Michigan Central R. Co.* (1894), 100 Mich 541; *Dunn Road Ma-*

*chinery Co.* v. *Charlevoix Abstract & Engineering Co.* (1929), 247 Mich 398 (64 ALR 947).

Applicable Michigan law requires that in the sale of a motor vehicle the seller indorse and deliver the certificate of title to the purchaser and makes it a misdemeanor to fail to indorse and deliver the certificate properly. See CLS 1961, §§ 257.233, 257.239 (Stat Ann 1960 Rev §§ 9.1933, 9.1939). A long line of Michigan cases interpreting these statutes and their antecedents provide ample authority for the proposition that a sale in violation of these provisions is void and that moneys paid under the terms of such a void contract can be recovered by the purchaser. *Scarborough* v. *Detroit Operating Co.* (1931), 256 Mich 173; *Fullwood* v. *Catsman* (1950), 329 Mich 120; *Sroka* v. *Catsman Transit-Mix Concrete, Inc.* (1957), 350 Mich 672.

Appellants interpret *Terpstra* v. *Grand Mobile Trailer Sales* (1958), 352 Mich 546, to require a different result under the facts here. Our reading of that case offers no support for this contention for two reasons. The first of these is that the majority opinion in *Terpstra* is clearly limited to the situation involving (p 554) "the right of a would-be purchaser of a motor vehicle under a void agreement to recover the purchase price paid where the return of the vehicle has been *rendered impossible because of the negligent acts of the plaintiff.*" (Emphasis supplied.) In that case, the subject matter of the contract had been completely destroyed by the negligent acts of the plaintiff purchaser. Such a situation is not present here.

The second reason for rejecting appellant's interpretation involves our reading of the concurring opinion of Mr. Justice EDWARDS on which they rely. After a review of the applicable cases, Justice EDWARDS concludes (p 549): "In those where re-

covery of the purchase price was allowed, the seller either had possession of the vehicle or tender thereof was shown." The appellants have possession of the vehicle here. We are reminded of Chief Justice BOYLES' characterization of the situation in *Fullwood* v. *Catsman, supra* (p 123):

"Plaintiff has paid for the truck in full. The defendant now has the truck, the money, and the title which he has refused to transfer to plaintiff. The court properly entered judgment for the plaintiff for the full amount paid by plaintiff to defendant for the truck."

Any objection by the appellant regarding the manner in which possession was obtained is amply answered in the record and by the finding of the trial court that the circumstances were, to a large degree, of its own making.

Appellant contends that the court erred in not making a finding as to whether plaintiff has satisfied his burden of proving that he was an employee of defendant, or an independent contractor. We feel that there was no error, dealing as the court was, with specific contracts and whether or not money was due under them. Employment status was not relevant.

In further unraveling the facts, the trial judge states that "The balance of the dispute is in reference to an account between the two parties as to moneys earned and moneys received. So far as parties are agreed, plaintiff's earnings from the North American Van Lines operation are a total of $2,048.29. It is also agreed that defendant advanced money to plaintiff during said same period of time in the amount of $1,422.93 which said figures, excluding the dispute as to the tractor payments, would leave the plaintiff entitled to $625.36."

The court found further:

"As to the National Van Lines operation, plaintiff claims a total of $5,082.19 due him, less advances of $2,698.86, leaving a net of $2,383.33. In arriving at this figure the plaintiff has charged the defendant with the complete line haul charge on the two accounts which remained in the trailer at the time plaintiff abandoned his load in Shreveport, Louisiana, which said haul amounted to $951.45. In addition to said figure, plaintiff claims that the defendant has charged plaintiff twice for advances of $200 and $100 respectively, which seems to be borne out in an examination of exhibits 14A, 13E, 14C, and 13B. Plaintiff claims in this respect that the amount of $951.45 was never paid him by the National Van Lines, due to the fact that plaintiff did not complete delivery as required by contract. In this respect the burden being upon the plaintiff to show that he had in fact earned such line haul charge and having failed in sustaining such burden, the court is required to charge him with the said $951.45, which would leave a balance due him under such accounting of $1,431.88.

"Under the court's interpretation of these last items, the plaintiff is entitled to recover from the defendant on these accounts the sum of $2,057.27. Added to such amount due and owing the plaintiff and defendant is the amount paid on the tractor purchases, based upon rescission by the plaintiff and recovery by the defendant of the property, the expense of such recovery to be charged to the plaintiff's account as well as the necessary repairs to put the tractor in a condition to be reasonably interpreted to be the same as when sold to the plaintiff under the conditional sales agreement."

It is here that the trial court, exercising as he did admirable patience and sagacity in reconciling the testimony and exhibits, found it necessary to extrapolate from the record, thus furnishing the only instance where we can agree with any of the remaining

contentions on appeal, either on behalf of appellant or appellee.

Appellee asks: "Was the trial court correct in deducting $951.45 and $1,200 from the amount the trial court found was due plaintiff by defendant?" To the first sum we agree, based as it is on testimony adduced at the trial, and the judge's statement that plaintiff did not sustain the burden of showing he earned it.

In making the deduction of $1,200, the trial court stated:

"No other testimony was given than that of a representative of defendant company who testified that an employee made two trips to Louisiana by plane to get the tractor. *The cost might be reasonably estimated to be $200. No testimony was offered to show amount of repairs, nature or cost thereof.* (Emphasis supplied.) Considering the use of the tractor for the period involved, and the reasonable cost of repossession at plaintiff's request and the necessary cost of repairs to restore the tractor to a line condition as at time of sale to plaintiff, the sum of $1,200 will be charged against plaintiff on this account, to be deducted from moneys paid by plaintiff as purchase of the truck, based upon available information from exhibits in this cause, in the amount of $2,067.41. On this phase of the litigation, plaintiff will recover $867.41."

We find an absence of proof in the record justifying the $1,200 deduction and such absence is attested to by the trial judge in his opinion. We cannot hold that the finding as to the $1,200 is of any force. Accordingly, this portion of the judgment is set aside and the sum consequently should be included in the award to the plaintiff.

Case affirmed as to all findings, except deduction by the trial court of $1,200 from plaintiff's award,

which sum shall be added to the lower court judgment in plaintiff's favor.

Remanded for amendment of the judgment in accord with this opinion. Costs to appellee.

HOLBROOK and McGREGOR, JJ., concurred.