In re Robert W. LAIRD, Jr., Debtor.

KRUPP, MEYERS AND HOFFMAN,
Plaintiff,

v.

Leo DOYLE, Trustee in Bankruptcy, Bertram A. Criniti, Elaine M. Criniti, Douglas A. Gifford, Esquire, Russell Eisenhauer, Goden Golladay, Frank Buono, Robert W. Laird, Jr., Defendants.

Bankruptcy No. 80–00630G.
Adv. No. 80–0359G.

United States Bankruptcy Court,
E. D. Pennsylvania.

Sept. 29, 1980.

Carroll G. Wille, Wille, McOscar & Winther, West Chester, Pa., for debtor, Robert W. Laird, Jr.

Bernard E. Schaeffer, Blasband & Schaeffer, Norristown, Pa., for plaintiff, Krupp, Meyers and Hoffman.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issues before the court are: (1) whether the debtor may claim an exemption in a common law arbitration award which was not reduced to judgment or paid into the state court until after the filing of the petition for relief by the debtor, (2) whether the debtor may avoid the lien of a creditor who has attached the arbitration award through garnishment proceedings, and (3) whether the debtor's attorney, who helped obtain the arbitration award, is entitled to payment of his fees from the fund held by the state court prior to any distribution to the debtor or the garnishing creditor. We conclude that (1) the debtor may claim the arbitration award as part of his exemptions pursuant to section 522(d)(5) of

the Bankruptcy Code, (2) the debtor may avoid the lien of the garnishing creditor as a judicial lien pursuant to section 522(f)(1), and (3) since the charging lien which the debtor's attorney has on the fund held by the state court did not arise until the fund came into existence, which was after the filing of the petition, the debtor may avoid that lien pursuant to sections 522(h) and 549. However, until the debtor takes some affirmative step to avoid that lien, it is a valid lien on the fund.

The facts of the instant case are as follows:[1] On November 16, 1979, a common law arbitration award in the amount of $6,700 was rendered in favor of Robert W. Laird, Jr., ("the debtor") against Bertram A. Criniti and Elaine M. Criniti ("the Crinitis"). On November 28, 1979, the debtor filed a petition to confirm the arbitration award in the Court of Common Pleas of Montgomery County ("the state court"). On December 7, 1979, Krupp, Meyers and Hoffman ("Krupp"), a judgment creditor of the debtor, filed a writ of attachment and garnishment interrogatories which were served on the Crinitis on December 12, 1979. The Crinitis answered the interrogatories and admitted the debt of $6,700 owed by them to the debtor. Subsequently, various other judgment creditors of the debtor (namely, Russell Eisenhauer, Goden Golladay and Frank Buono) served writs of attachment and interrogatories on the Crinitis.

On February 19, 1980, Douglas A. Gifford ("Gifford"), the attorney for the debtor in the arbitration proceeding, filed a petition in the state court seeking: (1) a stay of all of the garnishment proceedings, (2) a consolidation of the garnishment proceedings with the proceeding by the debtor against the Crinitis, (3) an entry of judgment for the debtor against the Crinitis, (4) an order directing the Crinitis to pay the $6,700 into the state court, and (5) an order directing that Gifford be paid $2,650 for his services from the $6,700 prior to any distribution of that fund to the garnishing creditors.

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

On March 27, 1980, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("the Code").[2] On March 28, 1980, Krupp filed an answer to the motion filed in the state court by Gifford. On that same day, Judge Smillie of the state court entered an order granting all of Gifford's requested relief except that dealing with the priority of distribution of the $6,700. On May 5, 1980, the Crinitis, pursuant to the order of Judge Smillie, deposited $6,700 with the prothonotary of the state court. On July 23, 1980, Krupp filed a complaint in this court for relief from the automatic stay to permit it to proceed against the fund held by the state court. Krupp named as defendants the other garnishing creditors[3] and the debtor's trustee in bankruptcy and requested determination that its lien on the fund is superior to any interest which the defendants might claim in that fund. Subsequently, the debtor requested that he be joined as a party defendant in this action because he claimed an interest in the $6,700 fund as part of his allowed exemptions.[4] Because of the debtor's interest and because no party objected, we directed that the debtor be joined as a defendant.[5]

The issues presented by this case are: (1) may the debtor claim the $6,700 fund held by the state court as an exemption and thus avoid Krupp's lien on that fund, (2) if the debtor may not avoid Krupp's lien, is Krupp entitled to relief from the automatic stay in order to execute on that lien, and (3) regardless of who is entitled to the fund as between the debtor and Krupp, is Gifford entitled to payment of his fees from the fund prior to payment to the other claimants.

With respect to the first issue, section 522(f)(1) of the Code provides that a debtor may avoid a judicial lien to the extent that it impairs an exemption which he has claimed.[6] Section 101(27) of the Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[7] In the instant case the lien of Krupp on the fund held by the state court arose, under Pennsylvania law,[8] as a result of the attachment proceedings instituted by Krupp. Therefore, that lien is clearly a judicial lien within the meaning of section 101(27).

Krupp argues, however, that the debtor may not avoid its lien because the debtor had no interest in the fund or in anything else which would entitle him to claim that fund as an exemption. As a basis for that argument, Krupp asserts that, as of the date of the filing of the debtor's petition, the debtor had only a common law arbitration award against the Crinitis, he had no enforceable judgment nor was there any fund in existence in which he had an interest. Further, Krupp contends that the debtor has no interest in the fund which is presently in the state court because that fund was created in violation of the automatic stay provisions of the Code.

We reject Krupp's arguments for several reasons. First, we cannot agree that the debtor has no interest in the fund held by the state court because that fund was created in violation of the automatic stay. We find that, although the order of Judge Smillie was entered after the debtor filed his petition for relief under the Code,

---

**2.** The Bankruptcy Code became effective on October 1, 1979. The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, 92 Stat. 2682 (1978).

**3.** Those garnishing creditor are Russell Eisenhauer, Goden Golladay and Frank Buono. None of them answered the complaint or appeared in this action.

**4.** On August 15, 1980, the debtor amended the schedules which accompanied his petition to include among his exemptions the fund held in state court.

**5.** No action was taken by any of the parties to formally join the debtor as a defendant although the parties proceeded as though the debtor had been joined. We, therefore, entered an order on September 19, 1980, formally joining the debtor as defendant effective as of the filing of the complaint.

**6.** 11 U.S.C. § 522(f)(1).

**7.** *Id.* at § 101(27).

**8.** *See* Pa.Stat.Ann. tit. 12, §§ 2711 *et seq.*

that order was not a violation of the automatic stay because it was not directed *against* the debtor or *against* the property of the debtor. *See* 11 U.S.C. § 362(a). Moreover, the interest which the debtor may have in the fund held by the state court is irrelevant to the issue herein because the interest which the debtor has in property which he may claim as exempt is determined as of the date of the filing of the petition for relief. *See* 11 U.S.C. §§ 522(b) & 541. On the day he filed his petition, the debtor herein only had a common law arbitration award; there was no fund of money held by the state court at that time.

■ However, we conclude that the debtor's interest at that time in that arbitration award was sufficient to permit him to claim that interest as exempt. Section 522(d)(5), under which the debtor seeks to exempt his interest in that fund, provides that the debtor may claim as exempt "The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property." [9] The debtor in this case did not use any of the $7,500 exemption to which he was entitled in a residence as provided in section 522(d)(1) and, therefore, is entitled to claim up to $7,900 in any property under section 522(d)(5). The courts have, for the most part, interpreted "any property" under that section very broadly. In *In re Nichols*, 4 B.R. 711, 6 Bankr.Ct.Dec. 597 (Bkrtcy. E.D. Mich.1980), the bankruptcy court stated:

> . . . the court is of the opinion, and will so hold, that the meaning of "any property" found in § 522(d)(5) is that which is literally found in the words: one, or some, of whatever kind of those items which are subject to ownership, whether it is tangible or intangible, visible or invisible, corporeal or incorporeal, real or personal.

*Id.* at 601. *See also, In re Boozer*, 4 B.R. 524, 6 Bankr.Ct.Dec. 529 (Bkrtcy.N.D.Ga. 1980); *In re Upright*, 1 B.R. 694, 1 Collier Bankr. Cases 2d 229 (Bkrtcy. N.D.N.Y.

1979). *But see, In re Smith*, 5 B.R. 500, 6 Bankr.Ct.Dec. 667 (C.D.Ill.1980). We conclude that "any property" under section 522(d)(5) is broad enough to include the interest which the debtor had in the common law arbitration award on the date he filed his petition for relief under the Code.

■ Consequently, we conclude that the debtor may claim as exempt under section 522(d)(5) his interest in the arbitration award, which is presently represented by the fund held by the state court, and may, therefore, avoid the garnishment lien of Krupp in that fund, as a judicial lien pursuant to section 522(f)(1). Because of that conclusion, we will deny Krupp's request for relief from the automatic stay to enable Krupp to proceed to enforce that lien.

■ With respect to the request of Gifford for payment of his fees from the fund prior to any distribution of that fund to Krupp or the debtor, we conclude that Gifford has a valid charging lien on the fund but that it may be avoided by the debtor. In order to establish a charging lien under Pennsylvania law

> . . . it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Recht v. Clairton Urban Redevelopment Authority*, 402 Pa. 599, 608, 168 A.2d 134, 138–39 (1961). *See also, United States v. Fidelity Philadelphia Trust*, 459 F.2d 771 (3d Cir. 1972).

In the instant case the services of Gifford did operate substantially to create the fund

---

**9.** 11 U.S.C. § 522(d)(5).

held by the state court. It appears that the debtor and Gifford agreed that Gifford was to receive his fee from the fund created by his efforts, and it appears that Gifford's claim herein is limited to his fee and costs incurred in creating the fund. Further, there are equitable considerations which necessitate the recognition and application of the charging lien: namely, that since the debtor has filed a petition for relief under the Code, it is unlikely that Gifford will receive any payment for his services unless the charging lien is recognized.

However, the first requirement for a charging lien—that there be a fund in existence, either in court or elsewhere—was not satisfied until May, 1980, when the Crinitis paid the $6,700 into the state court. Until that time there was no fund to which the charging lien could attach. Since that did not occur until after the debtor filed his petition for relief, the debtor may avoid that lien pursuant to sections 522(g) and (h) and section 549.[10] However, the debtor (and the trustee) herein have failed to take any steps to avoid the charging lien which Gifford has on the fund. Consequently, until the debtor or trustee takes steps to avoid that lien, it remains valid.

Krupp argues that the failure of the debtor to list Gifford as a creditor or to attempt to avoid the lien which Gifford has on the fund is a fraud which would prevent the debtor from claiming the fund as an exemption. Although it is true that certain fraudulent conduct will prevent a debtor from claiming the exemptions available to him under the Code,[11] we conclude that there is no evidence of such conduct here. There is no evidence that the debtor herein concealed any property or took any action with the intent to defraud any of his creditors. Further, Krupp has no standing to complain if the debtor fails to avoid Gif-

ford's lien. Krupp's lien is avoided whether or not Gifford's lien is avoided. Since Krupp has no interest in the fund, it has no standing to argue who, between the debtor and Gifford, does have an interest in the fund.

Therefore, we will deny Krupp's request for the relief from the automatic stay, allow the debtor to claim the fund as a part of his exemption, and declare that the charging lien of Gifford is a valid lien on the fund unless and until such time as the debtor or trustee may raise some action to avoid that lien.

---

**10.** Section 549 of the Code permits the trustee to avoid a transfer of the debtor's property (including the creation of a security interest) that occurred after the commencement of the case and that was not authorized by the court or the Code. 11 U.S.C. § 549. Where the trustee does not attempt to avoid such a transfer, the debtor may himself avoid the transfer and exempt that property if the transfer was not a voluntary transfer by the debtor and if the debtor did not conceal that property. 11 U.S.C. § 522(g) and (h).

**11.** *See* 3 Collier on Bankruptcy ' 522.08 (15th ed. 1980).