**In re Loyal BROCK, Debtor.**

**Joseph A. CHRYSTLER, Trustee,
Plaintiff,**

**v.**

**Steve GERESY, Defendant.**

**Bankruptcy No. NK 79–01857.
Adv. No. 80–0072.**

United States Bankruptcy Court,
W. D. Michigan.

March 5, 1981.

Stanley, Davidoff, Long & Gray, P. C., David Davidoff, Kalamazoo, Mich., for plaintiff.

Thomas H. Rosenhagen, Kalamazoo, Mich., for defendant.

Robert L. Redmond, Kalamazoo, Mich., for debtor.

### SALES—TITLE—EXEMPTIONS

DAVID E. NIMS, Jr., Bankruptcy Judge.

Joseph A. Chrystler, the duly appointed, qualified and acting trustee, asks that a

sale of a house trailer to the debtor be held void and that a judgment be entered in his favor and against Steve Geresy for all monies paid on the trailer.

On October 27, 1976, by a document entitled "security agreement", Geresy sold to debtor and his wife a 1973 Elcona Mobile home for $13,000. The purchase price was stated in the agreement to be $37,800. Although a title to the trailer had been issued in the name of seller, he did not endorse the assignment on the back of the title and has never delivered the title to the debtor.

Debtor has made payments on the trailer totaling $6,250.

Although debtor is not a party to this proceeding, he has filed a brief as amicus curiae claiming that the trailer is his home on which he has claimed an exemption, and, if the trustee prevails, he will be deprived of his home.

The wife of the debtor is not a party to this suit, so no disposition can be made as to her interest, if any.

Mich.Comp.Laws Sec. 257.233(d) [Mich. Stat.Ann. Sec. 9.1933(d) (Callaghan Cumulative Supp., 1980)] provides:

"The owner shall indorse on the back of the certificate of title an assignment thereof with warranty of title in the form printed thereon with a statement of all security interest in said vehicle or in any accessory thereon, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver or cause the same to be mailed or delivered to the department or to the purchaser or transferee at the time of the delivery to him of such vehicle, which shall show the payment or satisfaction of any security interest as shown on the original title."

Mich.Comp.Laws Sec. 257.239 [Mich.Stat. Ann. Sec. 9.1939 (Callaghan, 1973)] makes it "a misdemeanor for any person to fail or neglect to properly endorse and deliver a certificate of title to a transferee or owner lawfully entitled thereto."

Seller contends that a house trailer is not a registered vehicle. However, Mich.Comp. Laws Sec. 257.216 [Mich.Stat.Ann. Sec. 9.1916 (Callaghan Cum. Supp., 1980)] states:

"Every motor vehicle, trailer coach, trailer, semitrailer, and pole trailer, when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this act except: " * * *

"(b) A vehicle which is driven or moved upon a highway only for the purpose of crossing that highway from 1 property to another. * * * "

A "trailer coach" was defined as "every vehicle designed or used for dwelling or camping purposes or exclusively for camp living and drawn behind a motor vehicle." Mich.Comp.Laws Sec. 257.74 [Mich.Stat. Ann. Sec. 9.1874 (Callaghan, 1973)]. This statute was amended at the time the Mobile Home Commission Act became law January 2, 1979, some time after this transaction. Also, at the time of this sale, Mich.Comp. Laws Sec. 257.79 [Mich.Stat.Ann. Sec. 9.1879 (Callaghan, 1973)] read:

" 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks."

This Section was also amended, effective 1979.

■ It has been held that where Mich. Comp.Laws Sec. 257.233(d) has not been complied with, title does not pass. *Dodson v. Imperial Motors, Inc.*, 295 F.2d 609 (6th Cir., 1961), *Vriesman v. Ross*, 9 Mich.App. 120, 155 N.W.2d 857 (1967). Mich. Courts have also held that, in such cases, the buyer could rescind the sale and recover any monies paid. *Sroka v. Catsman Companies*, 350 Mich. 672, 86 N.W.2d 801 (1957); *Roe v. Flamegas Industrial Corp.*, 16 Mich.App. 210, 167 N.W.2d 835 (1969); *Waldron v. Drury's Van Lines, Inc.*, 1 Mich.App. 601, 137 N.W.2d 743 (1965).

In a case involving a security interest, this court held that a house trailer was subject to the certificate of title provisions. *In re Radny*, 12 U.S.C.Rep. 583 (W.D.Mich.,

1973). In *Terpstra v. Grand Mobile Trailer Sales*, 352 Mich. 546, 90 N.W.2d 504 (1958), two months after plaintiff purchased a house trailer from defendant, the trailer was destroyed because of the negligence of the buyer. The court affirmed a judgment for the seller as buyer could not return the trailer because of his negligence. But, the court stated at p. 554, 90 N.W.2d 504:

> "For the reasons set forth by this court in *Endres v. Mara-Rickenbacker Co.*, 243 Mich. 5, 219 N.W. 719, and approved in later decisions, the sale of the vehicle was void under the motor vehicle code of the state."

There being no valid sale, debtor and his wife were not the owners of the trailer but did have a cause of action against defendant for the monies paid. This cause of action became an asset of this estate. 11 U.S.C. Sec. 541.

Debtor has requested an exemption in the trailer under Section 522(d)(1) in the sum of $7,500. As the trailer is not an asset of the estate, debtor is not entitled to this exemption. However, debtor may amend his schedules as a matter of right "at any time before the case is closed." Bankruptcy Rule 110. Under the Official Interim Bankruptcy Forms, adopted by this court, Schedule B–4 provides for the listing of claimed exemptions. Therefore, I would find that the claim for exemptions may be amended at any time up to the date of closing of the estate unless there has been a detrimental reliance. Thus, debtor could amend his schedules to remove the Sec. 522(d)(1) exemption and substitute an exemption under Sec. 522(d)(5) being a claim against the defendant for $6,250.

The court recognizes that not all courts have agreed that Section 522(d)(5) is sufficiently broad to cover any assets of the estate. The provision provides that the exemption includes:

> "The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in <u>any property</u>." (underlining added)

The majority of courts interpreting these provisions in published opinions upheld the "spillover" of the unused portion of Section 522(d)(1) to any other property of the estate. *In re Laird*, 6 B.R. 273, 6 BCD 998 (Bkrtcy.E.D.Pa.1980); *In re Collins*, 5 B.R. 675, 6 BCD 834 (Bkrtcy.N.D.Cal.1980); *In re Nichols*, 4 B.R. 711, 6 BCD 597 (Bkrtcy.E.D.Mich.1980); *In re Dubrock*, 5 B.R. 353, 6 BCD 771 (Bkrtcy.W.D.Ky.1980); *In re Boozer*, 4 B.R. 524, 6 BCD 529 (Bkrtcy.N.D.Ga.1980); *In re Upright*, 1 B.R. 694, 5 BCD 1124 (Bkrtcy.N.D.N.Y.1979); *In re Bagley*, 1 B.R. 116, 5 BCD 901 (Bkrtcy.E.D.Pa.1979). The position taken by these cases is well stated in *Upright, supra*, 1 B.R. at p. 701, 5 BCD at p. 1128:

> "The trustee's position fails to take account of the fact that the Federal exemption scheme reflects a Federal interest in seeing that a debtor who petitions the Bankruptcy Court for relief comes out with adequate possessions to begin a fresh start. The exemptions made available under subsection (d) enunciate a bankruptcy policy favoring this fresh start. Therefore, where the words are clear and unequivocal the courts should not engraft limitations unexpressed by Congress.

> "The alternative to the homestead exemption was a Congressional recognition that many debtors do not acquire homes or have a small equity. Hence, the $400 figure, plus the spill-over from the unused amount of the homestead exemption 'in any property' is a reflection of a Congressional intention not to discriminate against the nonhomeowner, or the homeowner with little or no equity. See House Report No. 95–599, 95th Cong., 1st Sess. (1977) 361. It was intended that the nonhomeowner could use the $7,500 homestead exemption for any other property. No limitation was expressed with respect to the character of the property eligible for the subsection (d)(5) spill-over exemption. On the contrary, the phrase 'any property' means just that; the property need not be of the kind otherwise exempt under the various provisions in subsection (d)."

A notable exception to these cases is *In re Smith*, 5 B.R. 500, 6 BCD 667 (D.C.C.D.Ill.

1980). In *Smith*, the debtor attempted to exempt a federal Truth-In-Lending claim by using Subsection 522(d)(1) and (5). The Bankruptcy Court denied the exemption and the District Court affirmed. The District Judge's opinion stated that "any property" meant "any property described in Section 522." Two arguments for this narrow construction were used. First, the Court found that Section 522(d) ". . . devolved in large part from the Uniform Exemption Act of 1976, which developed in considerable part from proposals of the Commission on Bankruptcy laws . . ." Apparently, the UEA does not allow a "spillover." Second, the Court argues that:

". . . with all the care and effort which went into describing and delimiting the types of property which would be permitted as exempt to provide debtors a 'fresh start' after bankruptcy, Congress obviously did not intend any large additional 'wild card' or 'unfilled bin' theory of exemption here to be made up of any other kind of property which might exist." 5 B.R. at 501

The reasoning in *Smith, supra*, is unpersuasive. First, the opinion gives us no specific provision in the Code itself incorporating the UEA or the Commission's report; certainly Congress did not say that, when interpreting the Code, one must look to the UEA or the Commission Report. This is especially true when the Code's provision is as unambiguous as the phrase "any property." The only qualification I find for "any property" is that it be "property of the estate." 11 U.S.C. Section 522(b). As for the argument that a "spillover" is inconsistent with the careful delineation of types and amounts of property exemptable under the other provisions of Section 522(d), one can think of many cases where there would be no inconsistency at all, involving debtors with homestead equities equalling or exceeding the amounts allowed by Section 522(d)(1). It was also rational for Congress to allow the "spillover" for debtors with little or no homestead equity, for the reasons stated in *Upright, supra*.

I conclude that the line of cases beginning with *Bagley, supra*, and *Upright, supra*, should be followed, and that the unused portion of Section 522(d)(1) be ruled applicable to any property of the estate without the limitations derived from other sources used in *Smith, supra*.

Perforce, I hold that the plaintiff is entitled to a judgment against the defendant in the sum of $6,250, which monies will be held by the trustee subject to the rights of Mary Jane Brock. However, no judgment will be entered for a period of fifteen days from the date of this opinion and the debtor may have fifteen days in which to amend his schedules in the manner provided by Bankruptcy Rule 110. If the schedules are properly amended so as to claim an exemption under 11 U.S.C. Section 522(d)(5) in the claim against seller, such claim will be allowed and debtor may be subrogated to the rights of the trustee and the judgment will be entered in favor of debtor and Mary Jane Brock against the defendant. In such case, the debtor and Mrs. Brock may settle their judgment in any way that they may chose including entering into a new sales agreement and security interest with the assignment of title being properly executed and delivered and credit given for the amount of the judgment.

No costs are allowed to any of the parties hereto.