212

NOVINGER, Kevin and
Novinger, Darlene

v.

E.I. DuPONT DE NEMOURS & CO.,
INC., Mercedes-Benz of North America
Inc., Daimler-Benz Antien Gesell
Schaft, Glasurite GmbH, Basf Farber &
Farsern AG and General Motors Corp.

v.

LESONAL–WERKE and Dr. Kurt Her-
berts Co. GmbH and Original Imports,
Inc. and Richard-Yale Industries, Inc.

Appeal of Steven M. KRAMER, Esq.,
Charles J. Geffen, Esq. and Lee C.
Swartz, Esq., Appellants in No. 86–5216.

Appeal of William T. SMITH, Esquire,
Appellant in No. 86–5248.

Nos. 86–5216, 86–5248.

United States Court of Appeals,
Third Circuit.

Argued Nov. 21, 1986.
Decided Jan. 15, 1987.

Allan Kanner (argued), Allan Kanner & Associates, Philadelphia, Pa., for appellees Kevin Novinger, Darlene Novinger, Allan Kanner, H. Clark Connor and John O'Brien.

Steven M. Kramer (argued), Charles J. Geffen, Philadelphia, Pa., for appellants Steven M. Kramer, Esq. and Charles J. Geffen, Esq.

Lee C. Swartz (argued), Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., for appellants Lee C. Swartz, Esq. and William T. Smith, Esq.

Before GIBBONS, Chief Judge, SEITZ, Circuit Judge, and BARRY, District Judge.[*]

### OPINION OF THE COURT

GIBBONS, Chief Judge:

This appeal results from the efforts of the district court and successive attorneys

[*] Hon. Maryanne T. Barry, United States District Judge for the District of New Jersey, sitting by designation.

to deal with two difficult and suspicious clients in a serious personal injury case. The appellants are attorneys who once represented those clients but whose services were terminated prior to the time when a substituted attorney executed a settlement for them. The attorneys appeal from orders denying their motions for payment of attorneys' fees and expenses out of the proceeds of that settlement. We reverse and remand for further proceedings.

### I.

The plaintiffs Kevin and Darlene Novinger commenced the underlying diversity products liability action in 1979, alleging that Kevin Novinger was poisoned during the course of his employment as an auto mechanic from exposure to paint manufactured by the defendants. Novinger claimed that this exposure caused *inter alia*, blindness, permanent destruction of his teeth, and peripheral nerve damage, resulting in total disability. The Novingers asserted theories of strict liability and negligence.

The Novingers' diversity complaint was filed on their behalf by Steven M. Kramer, Esq. The Novingers had approached a Boston attorney, F. Lee Bailey, who referred them to Richard Sprague, Esq. Sprague, in turn referred the Novingers to the firm of Lewis & Kramer. On March 16, 1978 Kramer agreed in writing to prosecute workers' compensation and products liability claims on the basis of 40% of the gross recovery in the products liability case plus costs and expenses, and 33⅓% of the gross recovery in the workers' compensation case plus costs and expenses. In addition, Kramer agreed to advance all costs and expenses. As best can be determined from the information of record, the Novingers did not sign the March 16, 1978 agreement. On April 8, 1978 a more detailed writing was executed by Kramer, containing essentially the same terms, but clarify-

ing what may have been some misunderstanding on the part of the Novingers.[1] This letter, too, was not signed by the Novingers. Kevin Novinger did, however, sign a July 10, 1978 letter in which Kramer undertook to prosecute cases against "Aetna, Patterson and Burnside" on the "same terms as applicable to the products liability case." This suggests that there was a meeting of the minds on those terms. On September 1, 1978 Kramer wrote to Darlene Novinger confirming the agreement that the Novingers retain Richard A. Sprague and the firm of Lewis & Kramer in the products liability case, on a 40% contingency basis, with the understanding that "you will be obligated to pay the firm the foregoing fee of 40% of the gross recovery plus costs and expenses, even if you decide to instruct us to withdraw from the case." From the information of record, it appears that the Novingers did not sign the September 1, 1978 letter. Finally, a letter agreement dated April 11, 1979 outlines a contingent fee agreement with Kramer of 33⅓% of the gross recovery by verdict or settlement on the products liability case plus expenses. This letter is signed both by Kramer and by the Novingers. It obligates Kramer to compensate Bailey for any fees to which he may be entitled and to hold the Novingers harmless from any claim by Sprague or by the firm of Lewis & Kramer, which by then was dissolved.

Meanwhile the workers' compensation case and the products liability case had been filed on the Novingers' behalf by Kramer. The products liability case was filed in the Eastern District of Pennsylvania on January 5, 1979. It was transferred to the Middle District of Pennsylvania on September 20, 1979.

The Novingers apparently were dissatisfied with Kramer's representation, and

therefore, by a mailgram on July 21, 1980 purported to discharge him.[2] Kramer contended that prior to this time he and Charles J. Geffen, Esq. whom he retained to assist him in the preparation of the Novingers' case had expended substantial time and money. Consequently he asserted an attorneys' retaining lien on the Novingers' file. On February 11, 1981 the district court issued an order directing Kramer to show cause why he should not turn over the file to attorneys William T. Smith and David E. Cole, who on December 26, 1980 had entered an appearance on the Novingers' behalf. Apparently efforts were made to have Kramer surrender the file without reimbursement of expenses and without any recognition of his retaining lien. On April 9, 1981, however, the district court ordered:

> [T]hat Steven M. Kramer shall submit his file on this matter to the court ... [at] Harrisburg on or before April 20, 1981. At the conclusion of the case the court will determine what expenses and attorneys' fees should be paid to Steven M. Kramer. Due to the unique fee and expense agreement existing between the Novingers and Mr. Kramer, the court will not order payment of expenses at this time.

Kramer was not entirely satisfied with the protection afforded by this order and filed a notice of appeal. His motion for a stay was denied, and the district court ordered him to show cause why he should not be barred from further practice for failure to obey the April 9, 1981 order. On May 19, 1981 Kramer surrendered the file and subsequently withdrew his first appeal.

Smith was retained by the Novingers pursuant to a written contingent fee agreement dated December 17, 1980, covering the district court products liability case, a

---

1. For example, the April 8, 1978 letter agreement states that in the event of an unfavorable verdict or no settlement, the firm would not seek reimbursement from the Novingers of costs and expenses, and that the gross recovery in the workers' compensation case does not include awards for S.S.I. or Social Security benefits.

2. The reasons for the Novingers' dissatisfaction are disputed. Kramer contends the discharge occurred because he advised them that their expert, Dr. Leon Prockup wanted Kevin Novinger to undergo a psychiatric examination. The Novingers contend Kramer was less diligent in pursuing their cases than he should have been.

parallel common pleas court products liability case, the workers' compensation case, a common pleas court medical malpractice case, and a suit against the Aetna Insurance Company and others for unpaid insurance benefits. The agreement called for payment of 25% of all amounts received by way of settlement, 33⅓% of all amounts received after trial and verdict, plus costs and disbursements. In addition, the agreement contained a recital to the effect that the Novingers were prepared to show that Kramer had breached the terms of their April 11, 1979 agreement, and provided:

15. Attorney agrees that in the event of any settlement in any of the civil actions set forth in this Agreement, that the settlement check or checks will be made payable to Attorney and Clients. Under no circumstances whatsoever are the names of any previous attorneys, law firms, individuals or prior counsel, such as, but not limited to those mentioned herein, to appear on any settlement check whatsoever.

Attorney Contingent Agreement at 6. Kramer was not a party to the December 17, 1980 Smith-Novinger agreement, and nothing in the record suggests that he or the district court were aware of its terms at the time the April 9, 1981 order was entered.

Smith and Cole entered an appearance for the Novingers, and in February, 1981 Smith retained Lee C. Swartz, Esq. to be lead counsel in the case. The Novingers refused to sign a retainer agreement tendered by Swartz, although he apparently made it clear that his retention would involve no new obligation beyond that set forth in the Smith-Novinger December 17, 1980 agreement.

The relationship between the Novingers and the Smith-Cole-Swartz team of attorneys apparently was no less turbulent than that between the Novingers and the Kramer-Geffen team. The Novingers terminated the services of the Smith-Cole-Swartz team, and thereafter retained Bruce D. Desfor, Esq. pursuant to a written agreement. On November 7, 1982 in connection with Desfor's retention the Novingers executed a release as follows:

WHEREAS, Kevin and Darlene Novinger have retained William T. Smith and David E. Cole to prosecute various actions on their behalf resulting from injuries sustained by Kevin Novinger due to exposure to toxic paints, and also have retained Lee C. Swartz, along with William T. Smith and David E. Cole, to prosecute a tort action against various defendants in the United States District Court for the Middle District of Pennsylvania; and

WHEREAS, the said Kevin and Darlene Novinger are desirous of obtaining new counsel to prosecute all legal actions on their behalf, including but not limited to those actions referred to in a contingent fee agreement dated December 17, 1980; and

WHEREAS, in consideration of the withdrawal of William T. Smith, David E. Cole and Lee C. Swartz as counsel in this case, and in consideration of past services rendered by the said William T. Smith, David E. Cole and Lee C. Swartz, Kevin and Darlene Novinger are agreeable to release the said William T. Smith, David E. Cole and Lee C. Swartz from any and all liability resulting from their legal representation.

KNOW ALL MEN BY THESE PRESENTS, that we, Kevin and Darlene Novinger, husband and wife, 1388 Lowther Road, Camp Hill, Pennsylvania, each being of lawful age and sound mind, do hereby jointly and severally acknowledge that for each of us and our heirs, successors, executors, administrators and assigns that we, Kevin and Darlene Novinger, intending to be legally bound, do hereby release and forever discharge the said William T. Smith and David E. Cole and the law firm of Smith and Smith, P.C.; and Lee C. Swartz and the law firm of Hepford, Swartz, Menaker & Wilt; and their successors, assigns, administrators, agents, servants, employees and all other persons employed or retained by their firms, from any and every claim, in law or at equity, legal or

otherwise arising from, by reason of or pertaining in any way to Kevin and Darlene Novinger's retention of the said William T. Smith, David E. Cole and Lee C. Swartz.

We further understand that this release is not to be construed as an admission of any type of liability on the part of the party or parties hereby released.

Darlene Novinger further states that she has carefully read the foregoing release and Kevin Novinger states that the foregoing release has been read to him, and that both know the contents thereof and that do sign it as their own free act.

November 7, 1982 Release. Although Desfor was to prosecute the case, by letter docketed on November 30, 1982, Cole advised the district court that the Novingers had not asked Cole or Swartz to withdraw their appearance, but that their role would be inactive. The letter disclosed, further, that arrangements had been made between Desfor, Smith, Swartz and Cole respecting distribution of any fees from settlement or verdict. The new arrangement did not prove to be satisfactory to the Novingers. On December 7, 1982 Smith and Cole moved to withdraw their appearance and that motion was granted. Thereafter Swartz and Desfor also asked to be relieved.

The district court ordered the Novingers to obtain new counsel by November 6, 1984 or suffer a dismissal. On November 2, 1984 they signed a retainer agreement with Angino & Rovner, P.C. which provides in relevant part:

> In consideration [of Angino & Rovner, P.C. undertaking representation], we hereby agree to pay ANGINO & ROVNER, P.C. forty (40%) per cent of any settlement and/or jury verdict so obtained and in addition to pay the expenses incurred by all the attorneys in this matter with a power in ANGINO & ROVNER, P.C. to attempt to negotiate on our behalf for a most favorable settlement as to previous attorney's fees and expenses.

Power of Attorney and Fee Agreement dated November 2, 1984. Thus in November, 1984 the Novingers acknowledged in writing that claims for attorneys' fees and expenses were outstanding and might be asserted against them in the event of a verdict or settlement. On November 13, 1984, Angino & Rovner, P.C. filed a motion for leave to withdraw, apparently on the ground that it was unable to obtain from former counsel a complete file. That motion was denied on November 27, 1984, and a series of orders were entered with respect to the construction of a file of documents. On February 15, 1985 Angino & Rovner, P.C. renewed its motion to withdraw. That motion was granted over the objection of the Novingers on March 7, 1985.

For a time the Novingers proceeded without counsel. On July 22, 1985 Allan Kanner, their present attorney, entered his appearance on their behalf. After extended motion practice, on February 3, 1986 the case was reached for trial and jury selection commenced. Several days into trial, on February 12, 1986 a settlement was reached, the terms of which were sealed by order of the court.

## II.

When Kramer learned that the Novingers' products liability case had been settled he moved promptly for an order determining counsel fees due to him and Geffen pursuant to the district court's order of April 9, 1981. He also requested a hearing. The district court then *sua sponte* ordered that any attorney wishing to bring the matter of counsel fees before the court should do so by motion supported by briefs, and that those briefs address both the court's jurisdiction to entertain requests for counsel fees and the merits of the individual fee claims. Motions were then filed on behalf of Swartz and Smith.

Put on notice of the claims by attorneys for compensation out of the settlement fund, several defendants in the action moved for leave to deposit the settlement funds in court. The Novingers moved to

compel payment of the settlement monies. They also opposed payment of any attorneys' fees or costs to prior counsel, both because the district court lacked jurisdiction to resolve the fee dispute, and on the merits. Kramer sought an order preventing disbursement of the settlement fund pending resolution of the dispute over attorneys' fees.

On March 26, 1986, the district court, without a hearing, ordered: (1) that the defendants' motion to pay the settlement monies into court be denied; (2) that the motions by Kramer, Geffen, Smith and Swartz for attorneys' fees and costs be denied; and (3) that the defendants pay all settlement proceeds to the Novingers and Kanner. The attorneys' appeal followed.

### III.

In the district court the Novingers contended that the attorneys' motions should be denied because the trial court lacked subject matter jurisdiction over them. The district court rejected that contention, holding that although there was no diversity of citizenship between the Novingers and their former counsel there was ancillary jurisdiction over the dispute over fees and expenses. We agree. As a leading commentator notes:

> Ancillary jurisdiction exists because without it the federal court neither could dispose of the principal case effectively nor do complete justice in the dispute that is before the tribunal.

13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3523, at 85 (1984) (footnote omitted).

■ This description of the purpose of ancillary jurisdiction suggests that it is particularly necessary for disputes such as this one. Attorneys' fee arrangements in diversity cases, and in most federal question cases as well, are matters primarily of state contract law. Nevertheless the federal forum has a vital interest in those arrangements because they bear directly upon the ability of the court to dispose of cases before it in a fair manner. This case is perfectly illustrative. Differences arose between the Novingers and the successive counsel. If the federal forum were powerless either to order counsel to turn over a file or to authorize voluntary withdrawal in the face of such differences, the court's ability to dispose of the case would be severely limited. Thus there cannot be any question that the court has authority to enter orders such as those directing Kramer to surrender the file upon which he claimed a state law retaining lien, and permitting Smith and Swartz to withdraw. This power necessarily includes the power to resolve disputes with respect to the payment of attorneys' fees and expenses. Moreover, in the context of contingent fee litigation the nature of such disputes is such that they cannot be resolved at the time the court acts to permit substitution of counsel. At that point in the lawsuit the reasonable value of the attorney's services cannot be determined because it must be measured, at least in part, against the results obtained. Thus the rule of necessity with respect to attorney-client disputes growing out of the substitution of attorneys in the course of litigation must be broad enough to permit the resolution of those disputes after the underlying case has been resolved by judgment or settlement.

No case in this court addressing the precise jurisdictional question raised by the Novingers has been called to our attention.[3] In *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1108 (3d Cir.1979), however, we recognized that federal courts have the power to monitor contingent fee arrangements. *See also Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir.), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973) (federal court has supervisory jurisdiction to redetermine contingent fees in admiralty cases). These holdings are consistent with those in other

---

**3.** In *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 99 (3d Cir.1985) the District Court of the Virgin Islands, a court of general jurisdiction, had unquestioned subject matter jurisdiction.

courts which have recognized that there is ancillary jurisdiction to resolve attorney-client fee disputes in cases pending before federal courts. *See, e.g., Moore v. Telfon Communications Corp.*, 589 F.2d 959, 967 (9th Cir.1978); *Iowa v. Union Asphalt & Roadoils, Inc.*, 409 F.2d 1239, 1243–44 (8th Cir.1969); *National Equip. Rental Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 (2d Cir.1963); *American Fed'n of Tobacco-Growers, Inc. v. Allen*, 186 F.2d 590, 592 (4th Cir.1951) (per curiam); *Doggett v. Deauville Corp.*, 148 F.2d 881, 883 (5th Cir.1945). Thus we hold that the district court properly rejected the Novingers' jurisdictional challenge.[4]

## IV.

Besides their jurisdictional objection, the Novingers objected in a memorandum of fact and law on substantive grounds to the payment of any attorneys' fees. No affidavits were filed on their behalf. In contrast the moving attorneys supported their motions by affidavits and by detailed records of their services and expenses. The district court, however, denied those motions without a hearing. The court's reasoning differs with respect to the Kramer-Geffen and the Swartz-Smith applications. Before addressing that reasoning, it is appropriate to outline briefly the Pennsylvania law governing attorney-client contracts for contingent fee representation.

In Pennsylvania, the relationship between an attorney and a client is contractual. Nevertheless, a client may terminate the relationship at any time. *Richette v. Solomon*, 410 Pa. 6, 187 A.2d 910 (1963); *Sundheim v. Beaver County Bldg. & Loan Ass'n.*, 140 Pa.Super. 529, 14 A.2d 349 (1940). The attorney, on the other hand, may withdraw from representation only for reasonable cause and upon reasonable notice. *Spector v. Greenstein*, 85 Pa. Super. 177 (1925). As in other states, Pennsylvania recognizes that contingent fee agreements are lawful and binding on the parties thereto. *See, e.g., Richette v. Solomon, supra.* Although Pennsylvania Civil Procedure Rule 202 requires that contingent fee agreements be in writing, the absence of such a writing does not make oral contingent fee arrangements unenforceable. *Silverstein v. Hirst*, 376 Pa. 536, 103 A.2d 734 (1954). Similarly, like other retention agreements, contingent fee agreements are terminable by the client. When a client terminates the relationship the original attorney can recover reasonable compensation up to the time he was discharged. *Powers v. Rich*, 184 Pa. 325, 39 A. 62 (1898). Moreover, when a client through his own action makes it impossible for the attorney to perform the contract, a *quantum meruit* recovery is permitted. *Thole v. Martino*, 56 Pa.Super. 371 (1914). Furthermore, Pennsylvania common law recognizes both a general retaining lien and legal and equitable charging liens. The common law general retaining lien permits the attorney to retain money, papers or other property in his possession to secure payment of costs and fees not only in the particular case, but arising out of other professional business as well. *Greek Catholic Union of Russian Brotherhoods v. Russin*, 340 Pa. 295, 17 A.2d 402 (1941); Comment, *Attorney and Client-Attorney's Lien*, 45 Dick.L.Rev. 330 (1941). The equitable charging lien gives an attorney the right to be paid out of a fund in court which resulted from his skill and labor, thereby extending only to services rendered in the particular case. *Miller v. Union Barge Line Corp.*, 299 F.Supp. 718 (W.D.Pa.1969); Comment, *The Attorney's Lien in Pennsylvania*, 54 Dick.L.Rev. 62, 68 (1949). The legal charging lien applies to a fund in the attorney's possession as a result of his efforts in a particular case. *Smyth v. Fidelity & Deposit Co.*, 326 Pa. 391, 192 A. 640 (1937).

With these general principles in mind, several points are clear. First, the Novingers could not by unilateral action eliminate

---

**4.** We leave for another day the question whether ancillary jurisdiction extends to the resolution of a post settlement fee dispute between two attorneys, only one of whom was attorney of record. *See Taylor v. Kelsey*, 666 F.2d 53 (4th Cir.1981) (per curiam).

the claims of Kramer and Geffen for compensation for services rendered prior to their discharge. Nor was Kramer's retention of the file improper, at least not until such time as the district court took some step which recognized and provided a substitute for his retention lien. Second, Swartz and Smith were entitled to make appropriate arrangements with the attorneys who succeeded them with respect to compensation for the services they had already rendered.

■ In dealing with the Kramer-Geffen claim the district court noted that the Novingers' memorandum charged Kramer with professional misconduct because he allegedly did not diligently pursue their claims and because he hired Geffen to assist him. The court concluded:

> The charges of failure to appear for a hearing and the lien placed against plaintiffs' home are serious. This court will not extend its jurisdiction to entertain a malpractice action to determine the existence or extent of Kramer's alleged misconduct. Further, he had no authority to hire Geffen; thus, within the terms of the contract, he cannot bill the Novingers for that time. Kramer has failed, despite court order, to delineate which of his fees relate specifically to this litigation.

*Novinger v. E.I. DuPont de Nemours & Co.*, Civ. No. 79–1188, slip op. at 6–7 (M.D.Pa. Mar. 26, 1986). With due regard to the district court's knowledge of the district court record, this reasoning is completely inadequate to support the dismissal without a hearing of the Kramer-Geffen claim for fees and expenses. The court order to which the court refers was entered prior to the entry of the April 9, 1981 order, which terminated Kramer's retention lien on the express condition that his attorneys' fees and costs be determined at the conclusion of the case. The court *did* exercise jurisdiction to terminate the retention lien, and it is entirely specious to reason that consideration of a potential defense to the fee claim would "extend its jurisdiction." Moreover, the form of the order appealed from denies the fee motion on the merits, not for lack of jurisdiction. Thus it would, if not reversed, bind Kramer and Geffen in a state court lawsuit. The effect of the order, therefore, was to decide the dispute against Kramer and Geffen on the basis of the unverified contents of the Novingers' memorandum, without a hearing, even though the charges of professional misconduct are disputed. Even the contention that Kramer lacked authority to hire Geffen is disputed. Obviously an attorney hired on a contingent basis to prosecute a personal injury case has implied authority to seek the assistance of other attorneys. The provision in the April 11, 1979 letter about other attorneys cannot, on this record, as a matter of law, be construed to forbid such retention so long as the hired attorney's services were also subject to the contingent fee terms of that agreement.

■ In dismissing the Swartz-Smith motion for fees, the district court, relying on the release quoted in Part I above, held that as a matter of law these attorneys had waived their retention liens and thus any claim for recovery of the reasonable value of their services. With respect to a charging lien the court reasoned:

> Any basis for the assertion of a charging lien is seriously flawed. While this court will not here review in detail the activities of each attorney connected with this case, all of the attorneys now seeking fees had withdrawn by December 7, 1982 when Mr. Desfor became counsel. This court cannot say that services rendered more than three years before trial and settlement in this case substantially contributed to the fund out of which each seeks to be paid. Further there are equitable considerations which operate against the receipt of fees by the attorneys in question.

*Id.* at 8–9. The "equitable considerations" to which the court refers, however, are nowhere identified. The present record does not permit a conclusion that, as a matter of law, the Swartz-Smith team made no contribution to the settlement fund. Indeed, Swartz and Smith contend that at trial, prior to settlement, the Novingers' trial attorney utilized the services of an expert witness whom they had obtained

**220**

and instructed. Thus we can only affirm with respect to the Swartz-Smith motion if, as a matter of law, the release on which the Novingers rely was a contractual waiver of all claims both for services and for reimbursement of expenses.

The Novingers note that they released Smith and Swartz from any claims arising out of their representation "in consideration of the withdrawal of William T. Smith, David E. Cole and Lee C. Swartz as counsel in this case and in consideration of past services rendered by the said William T. Smith, David E. Cole and Lee C. Swartz." This release, they claim, was intended to be complete compensation for all past services and for any claim for reimbursement of expenses. The fee applicants, on the other hand, claim that they did not sign the release, and that it was intended to do no more than protect them against claims of professional misconduct when the Novingers' insisted upon Desfor coming into the case. Their version of the understanding of the parties with respect to the effect of the release is supported by the letter to the court docketed on November 30, 1982, stating that they would remain in the case in an inactive role. It is supported as well by the text of the November 6, 1984 retainer agreement which the Novingers signed with Angino & Rovner, P.C.

Swartz and Smith certainly were free to bargain away any right they had to be paid the reasonable value of their services and to be reimbursed for their expenses. Whether they did so is a question of the intention of the parties—a question of fact which on this record cannot be resolved. Thus we cannot affirm the denial of their motion on the basis of a contractual waiver. Disputed fact issues as to the intention of the parties must be resolved in the district court.

### V.

The order appealed from will be reversed and the case remanded for further proceedings consistent with this opinion. We also hold that, in order for the applicant-attorneys to present their case knowledgably, the total settlement amount must be disclosed to them.