In re Robert T. SACERDOTE, Patricia A. Sacerdote, Debtors.

Bankruptcy No. 86–02953G.

United States Bankruptcy Court, E.D. Pennsylvania.

June 8, 1987.

Jay Meyers, Philadelphia, Pa., for movant.

Mitchell W. Miller, Philadelphia, Pa., for debtors, Robert T. Sacerdote and Patricia A. Sacerdote.

Edward Sparkman, Philadelphia, Pa., trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

In this chapter 13 case, Jay Meyers, Esquire ("Meyers") has filed what is styled a

"Motion for Payment of Agreed Fee" to which debtors have filed objections. Meyers represented the debtors in a civil action which was filed prepetition and settled postpetition. He contends that a portion of the settlement fund represents his fee and must be paid to him immediately. The debtors argue that his services were terminated prepetition, that he holds only an unsecured claim and that the settlement fund is property of the estate which they duly exempted under 11 U.S.C. § 522(d)(5). Thus, debtors assert that any payment to Meyers must await plan confirmation and distribution pursuant to Bankr. Rule 3021.

For the reasons set forth below, I conclude that Meyers holds a secured claim (although for an amount less than he asserts) and that distribution will be made to him preconfirmation unless either his lien is invalidated or the debtors' plan is approved and provides for his secured claim within twenty days from the date of this order.

### I.

At trial, the following facts were established.

Prior to May 1, 1986, Meyers was retained by the debtors to pursue a claim held by Robert T. Sacerdote Janitorial Services against K-Mart, Inc. ("K-Mart"). When the debtors first employed Meyers, it was understood by all parties that Meyers would be paid on a contingent fee basis. However, there was no written contingent fee agreement prepared and I credit the testimony of the debtor, Robert Sacerdote, that no percentage fee was established at that time. Instead, Meyers led the debtors to understand that the fee percentage would be smaller than he normally would charge in such cases. The debtors believed the fee would be "small."

On May 1, 1986, Meyers commenced a lawsuit against K-Mart in Philadelphia Municipal Court, (small claims court for civil matters), seeking $5,000.00 in damages for the Janitorial Services.[1] A hearing was scheduled in the matter for June 5, 1986 at 9:30 A.M. The debtors, by some method which was not disclosed at the trial, were made aware that Meyers had initiated this lawsuit and were aware of the trial date and time.

On May 28, 1986, Meyers wrote to the debtors and informed them as follows:

Regarding the fee in Sacerdote v. K-Mart, we usually charge 50% for collection cases that require court action. But I told you that I would charge you about 40% providing that we do not have to spend a great deal of time on the case. I will try to treat you fairly.

Despite the language used in the letter, I credit the debtor's testimony that this communication was the first time the debtors were informed that Meyers would be seeking a 40% contingency fee. The debtors believed the fee was too large and between May 28, 1986 and June 5, 1986, they communicated with Meyers by telephone and told him that they did not want him to continue to represent them in this matter; however, they retained no other counsel.

On June 5, 1986, Meyers attended the scheduled hearing and obtained judgment by default against K-Mart. While leaving the courtroom after entry of judgment, Meyers met the debtors, who were first entering the courtroom, and explained to them what had just occurred. Shortly thereafter, K-Mart filed a pleading to open the default judgment and settlement negotiations then ensued between counsel for K-Mart and Meyers. Meyers apparently attended a hearing on K-Mart's petition to open the default judgment in August 1986. *See* Exhibit P-3. In addition, the debtors began direct negotiations with K-Mart on their own. Meyers, at some point, was aware of these direct discussions between the debtors and K-Mart.

On June 13, 1986, prior to these competing settlement discussions, the debtors filed a voluntary petition under chapter 13, and listed Meyers an unsecured creditor.

---

1. All parties have implicitly assumed that Robert T. Sacerdote Janitorial Services is not a separate entity but is the name under which the debtor traded. I will make the same assumption.

On or about August 14, 1986, Meyers filed an unsecured proof of claim in the amount of $2,100.00.[2] Neither Meyers nor the debtors sought court approval for Meyers' postpetition activities on behalf of the debtors.

Subsequent to Meyers' filing of a proof of claim, the debtors reached a settlement with K–Mart in which K–Mart agreed to pay $4,100.00 in full satisfaction of the claim against it. This sum was then paid to the chapter 13 trustee who agreed to hold 40% of the sum, or $1,640.00, in escrow pending a resolution of this dispute between the parties. Meyers played no part in the preparation of the settlement agreement between K–Mart and the debtors.

At trial, Meyers testified that he normally undertakes representation of clients in suits such as the one against K–Mart on a contingent fee basis for a fee greater than 40%. He kept no time records to determine the hours spent on the debtors' case, but he estimated that he spent approximately five hours prepetition and five hours postpetition on the matter. On those matters for which he undertakes representation on an hourly basis, he charges approximately $100.00 per hour.

## II.

In fairness to Meyers, who is not a bankruptcy attorney and who is representing himself pro se, his motion to compel payment should be likened to a motion to condition the debtor's use of the funds at issue upon the posting of adequate protection. *See* 11 U.S.C. § 363(e). *See also* 11 U.S.C. § 1303. Despite filing an unsecured proof of claim, Meyers is asserting an equitable

charging lien against the funds held by the trustee, based upon services rendered to the debtors. The debtors' proposed plan makes no provision for his secured claim, and thus if his lien is valid his security interest may not be adequately protected.[3] The debtors argue that Meyers has no charging lien under Pennsylvania law, and, even if such a lien existed, this lien arose postpetition and may be avoided pursuant to 11 U.S.C. § 549. Finally, they argue that if the lien is valid and not subject to avoidance it would be limited to the value of Meyer's services prior to his discharge which, debtors contend, is much less than $1,640.00; the debtors argue that Meyers should receive approximately $500.00.

In resolving this dispute, I look both to Pennsylvania law concerning attorney-client fee agreements as well as bankruptcy law. Applicable state law is settled; the relationship between an attorney and a client is contractual and that contract may be terminated at any time by the client even though the parties have entered into a contingent fee agreement.[4] *See Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212 (3d Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (*"Novinger"*); *Richette v. Solomon,* 410 Pa. 6, 187 A.2d 910 (1963); *Powers v. Rich,* 184 Pa. 325, 39 A. 62 (1898). In order to terminate the relationship, the client need not provide written notice to the attorney; mere notice of an act demonstrating the clear intention of the client to dismiss his counsel is sufficient. *Schafer's Estate,* 39 Pa.Super. 384 (1909); 3 *Pennsylvania Law Encyclopedia,* Attorneys § 33 (1957). If counsel is dismissed, thereby preventing the attorney from fulfilling the

---

**2.** It appears from the proof of claim, admitted as D–1, that $2,000.00 of the $2,100.00 represented 40% of the $5,000.00 judgment. The other $100.00 may be for services unrelated to the K–Mart litigation.

**3.** A secured party has no obligation to file a secured proof of claim to protect its lien in chapter 13. *See* Bankr.Rule 3002; *In re Evans,* 66 B.R. 506, 509–10 (Bankr.E.D.Pa.1986).

**4.** Pennsylvania Rule of Civil Procedure 202 requires that all contingent fee agreements be in writing. Municipal Court Rule 104(b) contains

a similar requirement. Nonetheless, Pennsylvania courts have not invalidated oral contingent fee agreements. *Miernicki v. Seltzer,* 312 Pa.Super. 166, 458 A.2d 566 (1983), *aff'd,* 505 Pa. 323, 479 A.2d 483 (1984); *accord, Novinger v. E.I. DuPont de Nemours & Co.,* 809 F.2d 212, 218 (3d Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). I do note, however, that had Meyers attempted to comply with this requirement and had the parties entered into a written retainer agreement, this dispute would have been unlikely.

contingent fee contract, counsel is entitled to receive, under the theory of quantum meruit, the reasonable value of services provided. *See Novinger; Lampl v. Latkanich,* 210 Pa.Super. 83, 231 A.2d 890 (1967); *Sundheim v. Bear County Building & Loan Association.*

■ A prepetition debt owed to an attorney may be a secured debt if the attorney's claim is protected by one of the three Pennsylvania common law liens: a retaining lien; a legal charging lien; or an equitable charging lien. *Novinger,* 809 F.2d at 218; *In re Garcia,* 69 B.R. 522 (Bankr.E.D.Pa. 1987). Here, since the attorney does not have possession of the settlement funds, he can only claim an equitable charging lien. "The equitable charging lien gives an attorney the right to be paid out of a fund in court which resulted from his skill and labor, thereby extending only to services rendered in the particular case." *Novinger,* 809 F.2d at 218.

In *In re Laird,* 6 B.R. 273 (Bankr.E.D. Pa.1980), the court set forth the common law criteria for the establishment of a charging lien:

> it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

6 B.R. at 176, *quoting Recht v. Clairton Urban Development Authority,* 402 Pa. 599, 608, 168 A.2d 134, 138-39 (1961). Such a lien has been recognized as valid in bankruptcy proceedings. *In re Fitterer Engineering Associates, Inc.,* 27 B.R. 878

(Bankr.E.D.Mich.1983) (applying Pennsylvania law); *In re Family and Industrial Medical Facilities, Inc.,* 25 B.R. 443 (Bankr.E.D.Pa.1982); *In re Laird. See also In re Sea Catch, Inc.,* 36 B.R. 226 (Bankr.D.Alaska 1983).

■ Based upon the evidence presented, I agree with Meyers that his claim meets the criteria for the imposition of an equitable charging lien. The trustee is holding a fund which arose out of litigation which the claimant commenced and in which he obtained judgment; it was intended that he look to this fund for payment and his claim is limited to those services provided in this matter; and, since the debtors have sought to discharge his claim in bankruptcy, equitable considerations give rise to the implementation of this lien. *In re Laird,* 6 B.R. at 277; *In re Family and Industrial Medical Facilities, Inc.,* 25 B.R. at 452.

However, I agree with the debtors that the value of the services rendered, on a quantum meruit basis, are less than 40% of the settlement amount. Meyers is only entitled to the reasonable value of services rendered until the time he was discharged.[5] *Novinger,* 809 F.2d at 218; *Powers v. Rich.* In determining the value of these services I must consider, pursuant to state law, various factors including: the amount of time spent, the character of the services, the difficulty and the amount of skill called for, the amount in dispute, the attorney's normal rates of charges, success obtained by the attorney and the reason for his dismissal from the case. *See Huffman's Estate,* 349 Pa. 59, 36 A.2d 640 (1944); *Robbins v. Weinstein,* 143 Pa.Super. 307, 17 A.2d 629 (1941); *Hanley v. Waxman,* 80 Pa.Super. 274 (1922).

■ While I recognize that Meyers was probably discharged prior to the June 5, 1986 hearing, I do note that he was discharged only a few days before the hearing, that he was counsel of record and that the debtors had not obtained new counsel.

---

**5.** I note that, in this case, the attorney was discharged prior to the filing of the bankruptcy petition. Therefore, no issues arise regarding compensation for services rendered in the absence of court appointment pursuant to 11 U.S.C. § 327. *See generally Matter of Arkansas Co.,* 798 F.2d 645 (3d Cir.1986).

Moreover, he was present when the case was called and the debtors were not; were he not present, it is possible that the matter may have been dismissed for want of prosecution. Once discharged by his client, Meyers had a duty to withdraw from the case. *See* Code of Professional Responsibility DR 2–110 (B)(4). However, he also had the duty to withdraw in such a way as to avoid prejudice to the rights of his client. *Id.* DR 2–110 (A)(2). Thus, he should be compensated for his services through June 5, 1986.[6]

■ Taking into account the various factors involved, I conclude that the reasonable value of Meyers' service to the debtors through June 5, 1986 is $700.00. I reach this result by balancing the relative simplicity of the small claims action, the brief amount of time reasonably expended by counsel, the fact that the judgment was by default, the result achieved as well as counsel's partial responsibility for the dispute which caused his dismissal against the successful result achieved by his efforts. Accordingly, Meyers has a secured claim in the amount of $700.00.

### III.

■ Although I have determined that Meyers possesses a secured claim, it does not follow that he is entitled to relief from the automatic stay in the form of immediate payment. *See* 11 U.S.C. §§ 362(d), 363(d), (e). The debtors, relying upon the dictum in *In re Laird,* argue that this lien arose postpetition and can be avoided pursuant to 11 U.S.C. § 549. *But see In re Sea Catch, Inc.,* 36 B.R. at 233–235 (charg-

ing lien relates back to time services were recorded). To date, neither the debtors nor any other party in interest has sought to avoid this lien, probably because all parties were awaiting a determination of Meyers' motion. Rather than grant Meyers' request for payment of a lien which may be later avoided, I will allow parties in interest 20 days from the date of the entry of this order to initiate any lien avoidance actions which may be appropriate. If such actions are not brought within that time period, I will presume that movant's lien is valid and order payment.[7]

Alternatively, within this 20 day period, the debtors may decide not to challenge the lien but to amend their chapter 13 plan and provide for this secured claim pursuant to 11 U.S.C. § 1322, 1325. Depending upon the plan's terms, this may constitute adequate protection thereby depriving Meyers of his right to relief under 11 U.S.C. §§ 362(d), 363(e).[8] *See In re Sheehan,* 38 B.R. 859 (Bankr.D.S.D.1984) (adequate protection provided, in part, from debtor's anticipated income); *In re Markim,* 15 B.R. 56 (Bankr.E.D.Pa.1981) (same). *See generally United States v. Norton,* 717 F.2d 767 (3d Cir.1983).

If the debtors, or any other party in interest, fail to take some action within the 20 day period, Meyers will be entitled to relief under sections 363(d) and 363(e). In the circumstances of this case, where the chapter 13 trustee is holding the cash collateral in escrow, it would be appropriate to direct the trustee to deliver the funds to Meyers.

An order consistent with this opinion will be entered.

---

6. I recognize that Meyers also expended effort in resisting K–Mart's petition to open. However, by that time, he had ample opportunity to make any appropriate filings needed to withdraw as counsel while permitting the debtors to obtain new counsel, if they wished. The same opportunity did not exist regarding the June 5 hearing.

7. Since a challenge to the movant's lien has not yet been brought, I need not pass upon the debtors' right, under 11 U.S.C. § 522(g), (h) to avoid the lien.

8. I do not decide, in this case, that the failure to provide for a secured claim in a chapter 13 plan

conclusively entitles the secured creditor to relief from the automatic stay. While proof that the debtor has not provided for a secured claim may satisfy the creditor's burden of going forward under section 362(d)(1), *see In re Skipworth,* 69 B.R. 526 (Bankr.E.D.Pa.1987); *In re Stranahan Gear Co.,* 67 B.R. 834 (Bankr.E.D.Pa. 1986), it is possible that a debtor can establish that the creditor is adequately protected by some means other than payment through the chapter 13 plan and that there is no cause to grant relief from the stay. I only decide that adequate protection must be provided within twenty days.

**492**

### ORDER

AND NOW, this 8 day of June, 1987, upon consideration of the motion of Jay Meyers, Esquire for payment of agreed fee, the response thereto and after notice and hearing, it is DECLARED and ORDERED as follows:

1. The movant has an allowed claim in the amount of $700.00 secured by an equitable charging lien on the $1,640.00 presently held in escrow by the chapter 13 trustee;

2. The debtors and all parties in interest are granted 20 days from the entry of this order to institute proceedings to avoid the movant's lien;

3. The debtors are granted 20 days from the entry of this order to amend their chapter 13 plan;

4. If no proceedings are instituted and no amended plan is filed pursuant to paragraphs 3 and 4 above, the chapter 13 trustee shall thereafter promptly pay the movant's allowed claim of $700.00 in full;

5. If proceedings are instituted or an amended plan is filed pursuant to paragraphs 3 and 4 above, the trustee shall retain $700.00 in escrow pending further order of this court.