### UNITED STATES of America

v.

### Paul F. POLISHAN, Defendant.

No. 3:CR–96–0274.

United States District Court, M.D. Pennsylvania.

Sept. 10, 1998.

Bruce Brandler, Asst U.S. Attorney, Harrisburg, PA, for plaintiff.

Michael G. Berger, New York City, Timothy P. Polishan, Wilkes–Barre, PA, for defendant.

### MEMORANDUM

VANASKIE, District Judge.

At issue in the above-captioned criminal case is the defendant's motion to compel third parties to fund his defense. Because I find that "ancillary jurisdiction" does not extend to cover defendant's claim that his former employer and its insurance company must pay defense costs as incurred, defendant's motion will be denied.[1]

1. In light of this determination, there is no need to issue the briefing schedule that defendant sought.

## I. BACKGROUND

On October 29, 1996, the government filed a twenty-one count indictment against defendant Paul F. Polishan (Polishan), contending that Polishan, while acting as the chief financial officer of the Leslie Fay Companies, Inc. (Leslie Fay), committed, *inter alia,* securities and bank fraud. (Dkt. Entry 1.) As a result of its financial troubles, Leslie Fay filed a Chapter 11 bankruptcy case and had a reorganization plan approved on April 21, 1997. (Def's Exhibits (Dkt. Entry 45) Ex. E.)

Various civil litigations had been instituted against Leslie Fay and Polishan. In the settlement of those civil actions, Leslie Fay's primary insurance carrier, Federal Insurance Company, exhausted its limits of liability. (Reliance's Opp. Letter (Dkt. Entry 51) Ex. C, at 7.) Polishan then requested that Reliance Insurance Company (Reliance), Leslie Fay's initial excess coverage carrier, advance his defense costs in this criminal action. (*Id.*) After some negotiations, Polishan and Reliance entered into an interim funding agreement through which Reliance agreed to advance defense funds to Polishan, provided that Polishan posted a bond to secure Reliance's funds in the event that it was later determined that Reliance was not liable to advance such funds. (*Id.*) Polishan was unable to post the required bond and Reliance instituted a declaratory judgment action in the Supreme Court of New York County, State of New York, seeking, *inter alia,* rescission of the Reliance policy on the ground of misrepresentation. In that state action, Reliance moved for a preliminary injunction to restrain Polishan from requiring Reliance to advance defense funds to Polishan under the interim funding agreement. (*Id.*)[2] On May 7, 1998, the Supreme Court of New York County granted Reliance's motion for a preliminary injunction and ordered that Reliance was not obligated to advance defense costs unless and until Polishan posted the required bond. (*Id.,* Ex. A.) Polishan then appealed this determination to the Appellate Division, First Department. Polishan also sought relief from the preliminary injunction pending resolution of the appeal. This request was denied and Polishan's appeal is currently pending.

On July 14, 1998, Polishan filed a motion in the above-captioned criminal action, seeking indemnification under the by-laws of Leslie Fay. (Dkt. Entry 43.) In essence, Polishan contends that Leslie Fay is required under its by-laws to advance his defense costs regardless of his ability to post a bond or other undertaking. Although Leslie Fay has been successfully reorganized under an approved Chapter 11 plan, Polishan contends that Leslie Fay's obligation of "advance indemnification" was not affected by the discharge order because that obligation is covered by insurance issued by Reliance. Polishan seeks an order from this Court directing Reliance either to advance Polishan his defense costs according to the terms of its excess policy with Leslie Fay or to reimburse Leslie Fay for its funding of Polishan's defense costs.

## II. DISCUSSION

Reliance, of course, is not a party to this criminal proceeding. Polishan argues that this Court has "ancillary jurisdiction" over his request to order Reliance to advance defense costs under its policy with Leslie Fay.

According to the ill-defined concept of ancillary jurisdiction, "a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case of which it could not take cognizance were they independently presented." 13 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3523 (1984). Under the Judicial Improvement Act of 1990, Congress combined the common law concepts of pendent jurisdiction and ancillary jurisdiction under the rubric of supplemental jurisdiction. 28 U.S.C. § 1367.[3] Section 1367 specifically provides,

---

**2.** As a result of the filing of the motion for preliminary injunction, the matter was extensively briefed by all interested parties, including Reliance, Polishan, Gulf Insurance Company (another excess carrier of Leslie Fay), and CIGNA Insurance Company (another excess carrier of Leslie Fay). (*Id.* Exs. C through H.)

**3.** "While pendent jurisdiction allowed district courts to hear additional, nonfederal claims

however, that supplemental jurisdiction exists "in *any civil action* of which the district courts have original jurisdiction." *Id.* (emphasis added). There is no mention of the application of supplemental jurisdiction to a criminal case. Given the specific statutory language, Polishan cannot argue that supplemental jurisdiction exists under § 1367 in relation to the alleged breach of Reliance's duty under its insurance policy with Leslie Fay to advance his defense costs. In fact, Polishan concedes that § 1367 does not provide a basis for jurisdiction over his contract claims. (Polishan's Supp.Br. (Dkt. Entry 44) at 5.)[4] Instead, Polishan relies upon the common law concept of ancillary jurisdiction.

The concept of ancillary jurisdiction has been extended to criminal proceedings, most notably when a party seeks the return of property seized by the government in connection with a pending criminal case. *See, e.g., Thompson v. Covington,* 47 F.3d 974, 975 (8th Cir.1995); *United States v. Frank,* 763 F.2d 551, 553 (3d Cir.1985); *United States v. Hubbard,* 650 F.2d 293, 313 (D.C.Cir.1980) ("We think this concept of ancillary jurisdiction is flexible enough to accommodate claims relating to seized property, even when made by strangers to the

criminal case."); *see also* Fed.R.Crim.P. 41(e) ("A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to the lawful possession of the property."). The use of ancillary jurisdiction in a criminal proceeding to determine *ownership* of property that is in the possession of a district court is not surprising. *See, e.g., United States v. Arnaiz,* 842 F.2d 217, 223 (9th Cir.1988) (Schroeder, J., dissenting) ("Ancillary jurisdiction historically focused on the relationship of defendants' and intervenors' nonfederal claims to property in the possession of the federal court."); *cf. Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 989 n. 48 (3d Cir.1984) ("Ancillary jurisdiction is derived from the notion that, once a federal court acquires jurisdiction over property, all claimants to the property must be able to litigate their claims in that federal court.").

In *Arnaiz,* a surety moved for exoneration of its bond under 18 U.S.C. § 3149 and Federal Rule of Criminal Procedure 46(f). *Id.* at 219.[5] The court ordered the surety to return

---

which were part of the same "case" as those claims within the court's original jurisdiction, the doctrine of ancillary jurisdiction allowed courts to hear claims brought against additional parties." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 300 (3d Cir.1998). Neither Leslie Fay nor Reliance is a party to this criminal action. Thus, Polishan seeks to invoke the doctrine of ancillary jurisdiction to include his contractual claims against Leslie Fay and Reliance as part of this ongoing criminal proceeding.

4. In any event, supplemental jurisdiction would not be appropriate under these circumstances:

> [T]hree requirements must be satisfied before a federal court may exercise supplemental jurisdiction. "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." The state and federal claims must derive from a common nucleus of operative facts, and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding.

*MCI Telecomms. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3d Cir.1995) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)), *cert. denied,* ––– U.S. –––, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996). Polishan has been indicted for conduct

relating to alleged securities fraud. Thus, the criminal trial in this matter will center around his conduct as chief financial officer for Leslie Fay. On the other hand, Polishan's motion for indemnification of expenses relates to an alleged contractual obligation on the part of Leslie Fay and an alleged breach of contract by Reliance in connection with its policy with Leslie Fay. Aside from the fact that the alleged expenses incurred in his defense in this criminal proceeding form the basis for the alleged breach of contract, Polishan's motion for indemnification shares no common facts with his present criminal indictment. Moreover, it cannot reasonably be maintained that claims for indemnification of defense costs are ordinarily expected to be tried in a criminal proceeding. Thus, even if statutory supplemental jurisdiction applied to a criminal case, there is no basis to justify the exercise of such jurisdiction.

5. Rule 46(f) provides:

> When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail. A surety may be exonerated by a timely deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody.

the collateral for the bond ($12,000) to the defendant. The defendant then moved to recover the *premium* on the bond. *Id.* at 218. Because the collateral was constructively in the court's possession, *i.e.*, pledged by the bail bond company, the court determined that "the return of the collateral . . . was so inextricably linked with the exoneration order that it must be considered within the district court's jurisdiction pursuant to 18 U.S.C. § 3149 and Rule 46(f)." *Id.* at 221. On the other hand, the court determined that it lacked ancillary jurisdiction over the parties' contractual dispute concerning the premium. As the court explained, "the dispute here is over the *premium*, which is not in the court's possession or control, but rather is in the possession and control of [the surety]. In contrast, the collateral is at least constructively within the court's possession or control." *Id.* at 221 n. 6. *Arnaiz* illustrates the requisite connection between a *res* and the pending criminal case to establish ancillary jurisdiction over a dispute pertaining to the *res*.

■ Because the dispute focuses on the property in the control of the court, ancillary jurisdiction is permitted to allow the court to properly dispose of the property. In this case, this traditional basis for the existence of ancillary jurisdiction in a criminal case—control over disputed property—is not present.

Polishan nonetheless insists that there is ancillary jurisdiction over his claims that Leslie Fay is obligated by its by-laws to advance his defense funds and that Reliance is obligated under its policy to indemnify Leslie Fay for these funds. In asserting the existence of ancillary jurisdiction over his breach of contract claims, Polishan relies on the salutary purposes underlying this court-made extension of the federal courts' limited subject matter jurisdiction.

■ These purposes include (a) enabling the court "to dispose of cases before it in a fair manner," *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir.), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), (b) eliminating multiple piecemeal actions, 13 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3523, (c) avoiding undue expense and inconvenience to the parties, *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 255 (2d Cir.1988), and (d) protecting officers of the court in fee disputes. *Id.* These aims are furthered when, for example, a court is called upon to decide a fee dispute arising in the course of the underlying litigation. In *Novinger*, the trial court, while ordering production of a discharged attorney's file over which the discharged lawyer had asserted an attorney's retaining lien, reserved the authority to determine the discharged lawyer's fee at the conclusion of the case. The Third Circuit affirmed the exercise of ancillary jurisdiction, explaining that "[i]f the federal forum were powerless either to order counsel to turn over a file or to authorize a voluntary withdrawal in the face of [attorney fees' disputes], the court's ability to dispose of the case would be severely limited." *Novinger*, 809 F.2d at 217.[6]

Under 18 U.S.C. § 3149, a surety may arrest a defendant and surrender the defendant to the United States Marshal in an attempt to be exonerated under its bond. In *Arnaiz*, the bail bond company was concerned that the defendant was not going to appear for trial, so it arrested the defendant and presented him to the United States Marshal in order to gain exoneration from its bond.

6. Polishan argues that the cases in which federal courts have exercised ancillary jurisdiction to mediate fee disputes between clients and attorneys in civil proceedings supports the existence of ancillary jurisdiction here. In such cases, however, both the attorneys and the clients have submitted themselves to the jurisdiction of the court through the filing of the legal action. Indeed, in *Novinger*, our Court of Appeals reserved

judgment as to whether jurisdiction would be proper over an attorney who had never entered an appearance in the federal action. 809 F.2d at 218 n. 4. In this case, Reliance is not a party to this *criminal proceeding*. Nor has it voluntarily submitted itself to the jurisdiction of this Court. Thus, the cases suggesting that a fee dispute between a client and his or her attorney may be resolved in a federal court through ancillary jurisdiction are not particularly relevant to the question of whether a defendant in a criminal proceeding may assert a breach of contract claim against a third party. *Cf. Wing v. East River Chinese Restaurant*, 884 F.Supp. 663, 667 (S.D.N.Y.1995) ("Moreover, Petitioner has not cited any authority, and this Court knows of none, that extends ancillary jurisdiction to an application by an attorney in the main action for

■ The fact that the goals of ancillary jurisdiction could be advanced by addressing Polishan's claims does not mean ancillary jurisdiction exists. Ancillary jurisdiction is not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 371, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Thus, the threshold issue is whether the ancillary claim falls within those constitutional limits.

Presence of the parties (*e.g.,* the lawyer and his client) or control over the property has been regarded as sufficient to recognize collateral claims as within the constitutional authority of federal courts. As noted above, this Court does not have control over disputed property. Moreover, Polishan's dispute is not with his lawyers, but with absent third parties—his former employer and its insurance companies. Thus, neither of the two factors that are typically found in cases in which federal courts address fee issues is present here.

■ In the absence of control over disputed property by a federal court or the presence of the contesting parties to a fee dispute, resort must be made to the other constitutional underpinning for the extension of the federal courts' limited subject matter jurisdiction. As noted by the Third Circuit:

> [A] court must determine whether it has constitutional power to determine a state-law claim. This 'power' test depends on whether there is a 'common nucleus of operative fact' between the state claim at issue and the accompanying federal claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As we see it, *Gibbs provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims.*

*Ambromovage,* 726 F.2d at 989 (emphasis added); *see also City of Chicago v. International College of Surgeons,* 522 U.S. 156, ——, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997) ("[T]his Court has long adhered to the principles of pendent and ancillary jurisdiction by which federal courts' original jurisdic-

fees from an entity other than a party to that

tion over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal claim] and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.' "); *Peacock v. Thomas,* 516 U.S. 349, 358, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("In determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original.' "); *Nanavati v. Burdette Tomlin Memorial Hosp.,* 857 F.2d 96, 105 (3d Cir. 1988) ("To satisfy the constitutional prong of the test, we must determine whether a substantial federal claim is present and whether the state and federal claims derive 'from a common nucleus of operative fact' such that a plaintiff 'would ordinarily be expected to try them together in one judicial proceeding.' "), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989); *Skevofilax v. Quigley,* 810 F.2d 378, 389 (3d Cir.) (Becker, concurring) ("[T]he first criterion for ancillary jurisdiction is always whether the ancillary and principal claims hinge on a 'common nucleus of operative fact.' "), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987).

The allegations contained in the indictment and Polishan's motion for payment of fees do not involve a common nucleus of operative fact. This is a criminal case concerning Polishan's actions while chief financial officer of Leslie Fay. Polishan's instant motion raises issues relating to (1) Leslie Fay's by-laws; and (2) Reliance's policy with Leslie Fay. Although Polishan's conduct while Leslie Fay's chief financial officer is related to these claims in a peripheral manner, it cannot be reasonably maintained that his motion arises out of the same nucleus of operative facts underlying the prosecution. The alleged criminal conduct is separate and distinct from Polishan's state law claims against Leslie Fay and Reliance. Under these circumstances, there is no constitutional basis for ancillary jurisdiction.

action.").

The only support for Polishan's contention that ancillary jurisdiction exists in a criminal proceeding to determine whether a *nonparty* is contractually required to advance defense costs is *United States v. Weissman*, No. 94–760, 1997 WL 334966 (S.D.N.Y. June 16, 1997). The opinion of the learned trial judge in *Weissman*, however, is not persuasive.

In *Weissman*, the defendant was convicted on two counts of perjury and one count of obstruction of justice in connection with actions he took while he was the chief financial officer of Empire Blue Cross/Blue Shield (Empire). Empire informed the defendant that his defense costs would no longer be advanced for his post-trial defense. *Id.* at *1. Empire's by-laws were similar to Leslie Fay's, requiring that defense costs be advanced. After the defendant filed in the criminal case a motion for payment of fees under Empire's by-laws, Empire filed a declaratory judgment action in New York state court, seeking a determination as to its obligation for defense costs. *Id.* at *3.

In addressing the defendant's motion for payment of fees, the district court acknowledged that "the case law in the criminal arena provide[d] little guidance" for the applicability of ancillary jurisdiction to a request for payment of defense costs from a nonparty. *Id.* at *4. The court also recognized the absence of authority in civil cases directly on point. Nonetheless, the court then determined that *analogous* civil cases supplied the requisite foundation for the existence of ancillary jurisdiction to entertain the defendant's motion.[7]

I believe that resort to *civil* cases for purposes of delineating the contours of ancillary jurisdiction in a criminal case is unsound. Federal criminal cases involve an action by the United States against a private citizen for allegedly unlawful acts. Unlike the civil arena, there is no room for cross claims, counterclaims, third party action, or wide-ranging discovery. Criminal procedure bears little resemblance to civil procedure.

In any event, in my view, the major flaw in *Weissman* is the court's failure to address the constitutional limitations of ancillary jurisdiction. Instead, the court focused on whether exercise of ancillary jurisdiction was consistent with its purposes. The threshold inquiry, however, must concern consistency with constitutional limits of federal judicial power. This is what the *Gibbs* test seeks to attain. It is not just a matter of fostering judicial economy, minimizing litigants' costs, or protecting court officers. It is, on the contrary, a matter of ensuring that federal judicial power is exercised only in a case or controversy within a federal court's limited subject matter jurisdiction. The existence of a common nucleus of operative facts, court control over property, or the presence of parties to a fee dispute are precisely the type of factors that assures that the vague concept of ancillary jurisdiction does not overwhelm the boundaries of federal judicial authority.

### III. CONCLUSION

Polishan's dispute with Leslie Fay and Reliance does not arise out of the same operative facts as those animating this federal prosecution. Neither Leslie Fay nor Reliance is a party to this case, and the Court does not have control over property from which Polishan's fees would be paid. The only relationship between the present criminal charges and Polishan's motion for payment of fees is that the pending criminal case generates the fees for which Polishan seeks payment. This relationship does not create ancillary jurisdiction.

Nor does the fact that Polishan's defense may be impaired by reason of Reliance's refusal to pay his fees as incurred create ancillary jurisdiction. Polishan's plight is indeed unfortunate, but not uncommon. Inability to afford counsel and experts of one's

---

7. *Weissman* relied heavily upon a civil fee dispute case involving an attorney who had not entered an appearance. *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir.1977). In this civil fee dispute case, in which ancillary jurisdiction was exercised over non-party counsel, however, the district court had control of the disputed funds. *Weissman*, 1997 WL 334966, at *6. As noted earlier, ancillary jurisdiction has historically been used to allow a court to resolve disputes over property in the possession of the court. Because no "fund" exists over which this Court has control, the case relied upon in *Weissman* for the proposition that ancillary jurisdiction may be asserted over counsel who was not a party to the litigation is inapposite.

choice after a criminal case has been pending occurs with some frequency, and yet the cases proceed to conclusion. The fortuity of a potential third-party source for payment of fees here does not justify interrupting the progress of this matter to adjudicate a collateral controversy. Polishan retains the right to seek court-appointed counsel and he also retains his remedies vis-a-vis Reliance. What he does not have is the right to disrupt this criminal proceeding by interjecting a state law breach of contract action. Therefore, Polishan's motion for payment of defense costs will be denied.